## R. E. L. Roy et al. v. H. M. Whitaker et al.

### No. 689.   Opinion Delivered December 19, 1898.

**1.  Independent Executor—Jurisdiction of Court.**

The object of article 1995 of the Revised Statutes was to enable a testator to commit the management of his estate to such person or persons as he might name, but not to so far withdraw the estate from the jurisdiction of the court that the settlement of it could not be resumed in case the trust should lapse by the failure of the executor to discharge his duties or from other causes. (Pp. 351, 352.)

**2.  Same—Vacancy—Grant of Letters.**

Estates administered by independent executors are within the provisions of article 1924, Revised Statutes, which authorizes a grant of further administration when the estate is unrepresented "by reason of the death, removal, or resignation of the executor or administrator." (P. 352.)

**3.  Same—Statute Construed.**

Article 2012, Revised Statutes, by which an administrator de bonis non succeeds to all the rights, powers, and duties conferred by law on executors generally, but is denied the extraordinary powers of an independent executor, shows that the Legislature contemplated the appointment of administrators to succeed such executors. (Pp. 352, 353.)

**4.  Same—Cases Reviewed.**

Langley v. Harris, 23 Texas, 569; Willis v. Ferguson, 59 Texas, 175; Frisby v. Withers, 61 Texas, 138; Dwyer v. Kalteyer, 68 Texas, 556, reviewed with reference to power to appoint an administrator de bonis non where an estate partly administered by an independent executor becomes vacant. (Pp. 353, 354.)

**5.  Same.**

The application of article 1989 in Roberts v. Connellee, 71 Texas, 11; that of article 1997 in Perkins v. Wood, 63 Texas, 396; that of articles 1991-1994, inclusive, in Prather v. McClelland, 76 Texas, 584; and that of article 2012 in Todd v. Willis, 66 Texas, 704, to cases of independent executors discussed. (Pp. 354, 355.)

**6.  Executor—When Includes Independent Executor.**

Except in those articles which relate to acts to be done in the settlement of an estate, the term "executors," as used in our statutes, includes independent as well as other executors. (P. 355.)

**7.  Independent Executor—Jurisdiction of County Court.**

The jurisdiction of the county court over estates of deceased persons administered under article 1995 attaches to the particular estate when proceedings for administration are begun; and when administered under that article the estate remains under the jurisdiction of the court, but all acts done in the "settlement" of the estate the independent executor is authorized to do and the court is prohibited from ordering. (Pp. 355, 356.)

**8.  Same—Resignation.**

Article 2030, Revised Statutes, providing for the resignation of executors and administrators, embraces independent executors, and the county court has authority to accept the resignation of such an executor and appoint an administrator de bonis non. (P. 356.)

**9.  Same.**

An independent executor, after qualifying and partially administering the estate, presented to the County Court his resignation, which was accepted and an administrator de bonis non appointed. Held, that its orders in making such appointment were not void as being beyond its jurisdiction. (Pp. 347-357.)

**10.  Certified Questions.**

The Supreme Court will not answer abstract questions certified to them, the answers to which would not apply to any given state of facts alleged in the petition. (P. 357.)

ON REHEARING.

Opinion Delivered February 9, 1899.

**11.  Administration—Sale of Interest of Heirs—Review by Certiorari.**

Orders of sale in the administration of the estate of a decedent could not affect the interest in the land so sold which his heirs had acquired by inheritance from his wife, previously deceased; and, not being bound, as to such interest, by the orders, such heirs could not have them reviewed in the District Court upon certiorari on the ground that they improperly ordered sold the entire title to the land instead of the community half interest of decedent.  (Pp. 357, 358.)

QUESTIONS CERTIFIED from the Court of Civil Appeals for the First District, in an appeal from Smith County.

*Hogg & Robertson,* for appellants.

*John M. Duncan* and *T. N. Jones,* for appellees.

*Marsh & McIlwaine* and *J. W. Fitzgerald* filed brief for C. A. Smith ·et al., appellees, in the Court of Civil Appeals.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the First Supreme Judicial District has certified to this court the following statement and questions:

"In the above case the questions stated below have arisen and are deemed material and essential to a proper decision of the case, and they are therefore certified for decision.

"The case is as follows:   Within proper time, appellant, Susie Murphy Roy, instituted this action in the District Court of Smith County to procure a revision by certiorari of the proceedings in the County Court of that county, had in an administration of the estate of her father, A. M. Murphy, deceased, of which appellee Whitaker had been appointed and acted as administrator.   By an amendment subsequently filed other ·children of Murphy, who were devisees and legatees under his will, were joined as plaintiffs.   All of plaintiffs sought relief, not only as devisees, etc., of their said father, but as heirs of their deceased mother, Mrs. Elizabeth Murphy.   The allegations of the petition, which is very lengthy, are stated only so far as they are deemed essential to present the questions certified.   The petition, among other things, showed the following facts:

"Mrs. Murphy, the wife of A. M. Murphy and mother of appellants, died intestate in 1879, leaving a large community estate of herself and husband, against which there were no debts.   A. M. Murphy died in 1886, leaving such estate with no debts against it.   By will, he appointed his son, Arch Murphy, Jr., as executor, and provided that no bond should be required of him and no action taken in court, except to probate the will and file an inventory and appraisement.   The will was duly probated, the executor qualified and filed the inventory and received letters

testamentary, and took charge and control of the estate on the 9th day of May, 1887.

"At the time of Murphy's death several of the children, including appellants, were minors and living together as a family, upon a homestead in Tyler, and by the will it was provided that they should remain together upon and keep up the homestead, under the care and protection of a lady, who was named, until Susie Murphy, now Mrs. Roy, who was the youngest child, should become of age or marry, and that the place should not then be divided until it should cease to be a homestead for any unmarried children. It was averred that at all times the estate was possessed of ample means for the carrying out of this direction, and that the lady named as the protector and housekeeper continued capable and willing to perform her duty as such, and that the children had never abandoned or ceased to use the homestead, until it was sold as alleged.

"On the 23d day of November, 1887, the executor presented to the County Court of Smith County the following paper: 'In the matter of the Estate of A. M. Murphy, deceased.—And now comes Arch Murphy, executor of the estate of A. M. Murphy, deceased, and says that he declines to further act as such executor, and hereby resigns said office and trust. Witness my hand, this the 23d of November, 1887. Arch Murphy.'

"At the same time the court entered the following order: 'Estate of A. M. Murphy, deceased. November 23, 1887.—On this day came on to be considered the resignation of Arch Murphy, executor of the estate of A. M. Murphy, deceased, and the same being fully considered by the court is accepted, and the said Arch Murphy is hereby discharged from further liability as executor of said estate.'

"No notice of this proceeding was given, no account was filed by the executor, and no other action touching him taken, except that stated. At the same time, H. M. Whitaker was appointed temporary administrator of the estate, and continued to act as such until January 11, 1888, when he was appointed permanent administrator. Many wrongs are charged, of commission and omission on the part of the administrator and of the court, at the inception and during the progress of the administration, which we deem it unnecessary to state with any great detail. Among them are the allowance by the administrator of fictitious claims, pretended to have been created by the executor in connection with a jewelry business, in which he and the deceased were engaged at the death of the latter, and which the executor was authorized by the will to carry on. On the 5th of November, 1888, the administrator, after having sold the jewelry business, procured an order to sell a considerable part of the real estate, when there were no debts and in violation of the will, which sale was made and confirmed. These are among the orders sought to be reversed, and the purchasers at such sales, and, in some instances, subsequent purchasers from them, are joined as parties to the suit. The will contained the following provision: 'Item VIII.

It is my further will and desire that all my property shall be kept together until my youngest child shall become of age or marry, except perishable property, which may be disposed of at the discretion and judgment of my executor; except, also, as I may direct herein.'

"Application was made to the court by Orville Murphy, one of the children, to annul this provision on the ground that it was impossible for it to be executed as was intended by the testator, because the executor was then dead (he having died April 31, 1888), and the court on the eighth day of February, 1890, entered an order annulling it for the reason stated. It is charged that the provision could have been executed, as the rents and revenues of the estate were amply sufficient for the purpose, and that the proceeding was had as a means of effectuating a conspiracy between certain ones of the defendants to procure a partition of the property and obtain possession of it.

"On the 22d day of July, 1890, the administrator applied for and obtained an order for the partition of the homestead and the other real estate unsold, and the commissioners were appointed, one of whom was one of the defendants charged with conspiracy, and four days later they made a special report that they could not divide the property and recommended its sale, which report was adopted by the court and the sale was accordingly ordered. In this decree it was also ordered that Mrs. Lena Clay, one of the children, might take property at its appraised value as one of the distributees. Under this decree, the real estate described, including the homestead, was set apart and adjudged to Mrs. Clay at its appraised value, and was conveyed by her and her husband to parties who are joined as defendants. It is alleged that the husband of Mrs. Clay had become indebted to some of defendants, charged to be conspirators, and that this proceeding was conceived and carried through for the purpose of obtaining the property of the estate to Mrs. Clay, and, through her and her husband, to the others in payment of such indebtedness, and that no consideration was ever paid to the estate for it. In addition to the persons thus immediately connected with this proceeding, others, who are alleged to have purchased under them with notice of the matters stated, are joined. A number of other orders of the court allowing claims, administrator's charges, attorneys' fees, allowing the administrator's final account and discharging him, are attacked as being erroneous, and the petition seeks to have a trial de novo upon all of the proceedings and to have the administration set aside in toto, as null and void, or the various orders complained of reviewed and reversed.

"The orders of sale and confirmation of sale of the homestead were attacked as being contrary to law and to the provisions of the will. And the orders for the sales of the one-half interest in the community property which had belonged to Mrs. Murphy were also attacked as being unauthorized and unlawful.

"Among a number of special exceptions not acted on in the court below, the defendants took the following special exceptions:

" 'Further and specially excepting to said petition, these defendants say that it appears on the face thereof that there is a misjoinder of parties defendant and of causes of action, in that these defendants, as purchasers of the property described in said petition as having belonged to the estate of A. M. Murphy, deceased, are joined with the administrators of said estate in a proceeding supposed, from some allusions in the petition, and some features of the prayer for relief and for the character of the process prayed for and issued thereunder, to have been intended as a certiorari proceeding for the correction of the errors in certain orders and decrees of the County Court of Smith County entered in the matter of the said estate of A. M. Murphy, deceased; and in that the complainant has joined in this proceeding separate and distinct causes of action against separate individuals, such causes of action being altogether different in their nature; that is to say, plaintiffs make allegations and seek thereon, as is shown by the prayer of the petition:

" '1.    A revision and correction of every material order made in the said administration of said estate.

" '2.    That the title to the real estate alleged to be held by these defendants be divested out of them and invested in plaintiffs.

" '3.    For a partition of all such property except the homestead.

" '4.    That the homestead be restored to the plaintiffs, Kate Murphy, for occupancy.

" '5.    That in case this can not be done, they ask a money judgment against the defendants, upon the ground of a conspiracy by which they have been defrauded of their property.

" '6.    For a judgment against H. M. Whitaker for about $18,000 alleged to have been unlawfully paid out by him and unlawfully collected and applied to his own use.

" '7.    For a judgment against Chas. T. Bonner for the sum of $3000 alleged to have been unlawfully received and appropriated by him.

" 'Further, the petition alleges total want of jurisdiction in the County Court to appoint H. M. Whitaker administrator, or to make any of the orders or decrees complained of, thus showing that this court has no jurisdiction to entertain plaintiffs' petition.'

"The court below in passing upon these exceptions held that under the allegations 'the County Court of Smith County, acted within its jurisdiction and had the power to appoint H. M. Whitaker administrator de bonis non,' and that therefore there was a misjoinder of parties and of causes of action and the petition was multifarious.    The exceptions 'in said regard' were sustained, and upon plaintiffs' declining to amend the cause was dismissed.

"By the amended petition, the prayers for the relief mentioned in subdivisions 2, 3, 4, 5, 6, and 7 of the exception were eliminated before the exceptions were acted on, and it was sought only to revise and set aside the various orders as shown by the above statement."

Upon this statement the questions certified are the following:

"1.    Did the County Court upon the facts stated and shown by its

own record, viz., the probate and record of the will, the qualification of the executor, the filing and approval of the inventory and appraisement, the issuance of letters testamentary, the commission of the estate into the charge of the executor, and the resignation of the executor, have power to appoint Whitaker temporary administrator and afterwards permanent administrator of such estate as done, or were its orders void as beyond its jurisdiction?

"2. If the grant of such administrations be held void, can this proceeding by certiorari be entertained by the District Court to declare such nullity and annul the proceeding?

"3. If the affirmative of the second question is true, was it proper to join as defendants all parties' interested in sustaining the administration, including the administrator, persons who received money under the orders of the court, persons who purchased property from the administrator, and subsequent purchasers from such immediate purchasers?

"4. If it be true that the County Court had jurisdiction to grant the administration and its orders are not void, is it competent for plaintiffs in this proceeding to correct all of the orders complained of because all of the defendants are interested in some of them, and some of the defendants in all of them, when all are not interested in all of the orders?

"5. If the grant of administration be not void, then was it competent for plaintiffs to join as defendants all of the parties indicated in the statement and in the third question?

"6. Is it competent in this proceeding for plaintiffs to make their claim to one-half of the real property sold, which they inherited from their mother, the ground for reviewing the orders made in the administration of their father's estate because such orders were for the sale of the whole of the property?

"7. If it be held that any of the matters alleged were improperly sought to be connected with the proceeding by certiorari, and that any defendant or class of defendants were improperly joined, should the court below, upon proper exceptions, have pruned away the irrelevant matter and dismissed the parties improperly joined and allowed the cause to proceed as to the remainder, or was it proper to dismiss the action upon plaintiffs' declining to amend?"

We have not found that any other State has a statute which authorizes a testator to withdraw his estate from the control of the courts. We must therefore rely upon the decisions of our own court for aid in construing article 1995 of our Revised Statutes, which reads as follows: "Any person capable of making a will may so provide in his will that no other action shall be had in the county court in relation to the settlement of his estate than the probating and recording of his will and the return of an inventory, appraisement, and lists of claims of his estate." That article is identical with the first clause of section 110 of the probate law of 1848 with the addition of the words "appraisement and lists of claims." The former law was construed by the Supreme Court in the case of Langley v. Harris, 23 Texas, 569, upon these facts: John

Duvall made a will appointing his three sons executors, and provided that the probate court should have no control over his estate except the probating of the will and the return of an inventory. The executors named failed to accept and qualify, and the probate court appointed an administrator with the will annexed. It was claimed in that case that the administrator was not subject, after his appointment, to the control of the county court, but had the right to exercise the powers of an independent executor. In passing upon that question Judge Roberts, speaking for the court, said: "The section of the statute which gives the testator the right to insert such a provision in his will contemplates that the executor named will accept the trust confided to him. It is a special trust which can not be transferred to another by the trustee nor delegated to another by the county court. It confides in the discretion and integrity of a particular person; and if that person should fail to accept and exercise the trust, it is at an end; and, as in any other case where there is a will without an executor, the county court must appoint an administrator with the will annexed." The law requires that the executor appointed by the will, after he has qualified, shall return to the court an ·inventory and appraisement and lists of claims of the estate which he represents. This implies that an executor must be named, must qualify and continue to act, to give effect to that article of the statute, because no other person can return the inventory and lists of claims except it be an administrator appointed by the court upon the failure of the executor to qualify. From the terms of this statute and the reasoning of Judge Roberts in the case above cited, the conclusion must be drawn that the object of the Legislature was to enable a testator to commit the management of his estate to such person or persons as he might name, upon the theory that the testator has the right to dispose of his estate as he may choose and is better qualified to make the selection than the court; but it was not contemplated that such estate should be so far withdrawn from the jurisdiction of the court that the settlement of it could not be resumed in case the trust should lapse by failure of the executor to discharge his duties, or from other causes. If, however, the estate should cease to be represented, either by the death or resignation of the executor or by his abandonment of the trust conferred upon him, it would fall within the provisions of article 1924 of the Revised Statutes, which reads as follows: "Whenever an estate is unrepresented by reason of the death, removal, or resignation of the executor or administrator, the court shall grant further administration upon such estate when necessary, and with the will annexed, where there is a will, in the same manner and under the same regulations provided for the appointment of original executors or administrators." Article 2012, Revised Statutes, prescribes the powers of an administrator de bonis non, appointed to succeed an executor, in the following terms: "When an administrator of the estate not administered has been or shall be hereafter appointed he shall succeed to all the rights, powers, and duties of the former executor or adminis-

trator, except such rights and powers conferred on the former executor by the will of the testator as are different from those conferred by this title on executors generally." It will be observed that such appointee is denied the exercise of the extraordinary powers of an independent executor, from which it is plain that the Legislature contemplated the appointment of administrators to succeed such executors.

The construction placed upon article 1995 in Langley v. Harris is sustained by the following cases: Willis v. Ferguson, 59 Texas, 175; Frisby v. Withers, 61 Texas, 138; Dwyer v. Kalteyer, 68 Texas, 556.

In the case of Willis v. Ferguson the testator made a will appointing an independent executrix, who, after entering upon the discharge of the duties, abandoned the trust. The question before the court was the validity of the appointment made by the county court of an administrator de bonis non with the will annexed. Sustaining the appointment, Chief Justice Willie, for the court, said: "Indeed, the facts proven on the second trial of the cause tended to show that the county judge acted on sufficient evidence in declaring the estate vacant and ready for the appointment of an administrator de bonis non. The executrix had openly declared her intention to have nothing to do with the estate; had refused to return an inventory of it; had abandoned the executrixship and requested the county judge to appoint an administrator de bonis non, naming her son, John M. Lewis, Jr., as the person she wished to be appointed." It is true in that case the attack was collateral, while in this it is by direct proceeding, but we see no material difference, for if the court had no jurisdiction of the estate the appointment was void and could be attacked collaterally as well as directly.

In the case of Frisby v. Withers, above cited, the testator appointed two executors, only one of whom qualified. Before the estate was finally settled, the executor who qualified resigned his trust and the probate court appointed an administrator de bonis non with the will annexed, who sold land of the estate without an order of court. Judge Stayton, delivering the opinion, said: "Under this (the appointment as administrator) he could administer the estate in accordance with the will under the order of the probate court, but such appointment did not carry with it the right to exercise the discretionary powers conferred alone upon the executors named in the will." This is a distinct recognition of the power to appoint the administrator de bonis non upon resignation by an independent executor.

In the case of Dwyer v. Kalteyer, 68 Texas, 556, the authority of the administrator de bonis non, with the will annexed, to sue the representative of the deceased independent executor of the will was the question before the court. Grenet made a will in which he appointed Joseph E. Dwyer independent executor, and afterwards died. Dwyer qualified as executor and entered upon the discharge of the duties of executor, but died before the estate was fully administered. The probate court of

Bexar County appointed Kalteyer administrator de bonis non of the estate of Grenet, with the will annexed, who sued the executor of Dwyer for property of the estate of Grenet not accounted for. It was held that the admnistrator de bonis non could maintain the suit. It is true that the court does not discuss the authority of the probate court to appoint an administrator de bonis non upon such state of facts, but that question was necessarily involved, for if the appointment had been void the administrator could not have maintained the action against the representative of the deceased executor. If there had been a doubt in the minds of the court of the validity of the appointment, it would have been discussed, although not assigned, because fundamental in its character.

The Revised Statutes of the State, under the title of "Estates of Decedents," provides general rules to govern in the administration of estates of deceased persons, whether conducted by administrators or executors. Some of the provisions apply alone to administrators, others to administrators and executors alike, while some apply only to executors. Of the last named class of provisions, some apply especially to independent executors, and others, although expressed in general terms, have been construed to embrace both classes of executors.

Article 1989, which in substance and general terms prescribes that, if there be more than one executor acting at the same time, the acts of either shall be valid, is held to include independent executors. Roberts v. Connellee, 71 Texas, 11.

Under article 1997, when no bond is required of the executor, any creditor or other person interested in the estate may apply to the county court for an order requiring the executor to give bond. The term "executor" here used embraces such executors as are administering the estate under the control of the court without bond as well as those who are exempted from such control and from the requirement to give a bond under the law. Perkins v. Wood, 63 Texas, 396.

In Prather v McClelland, 76 Texas, 584, this court held that articles 1991-1994, inclusive, are applicable alike to wills administered by independent executors and others, and that after the probate of the will, the return of an inventory and list of claims, and the qualification of the executor, the probate court can exercise the power to annul a provision of a will although it exempts the executor from the control of the court in the "settlement of the estate."

If a compliance with article 1995 has the effect to withdraw the estate from the probate court, such action as is shown by these cases could not be sustained.

The executors appointed by the will of B. H. Epperson suffered judgment to be entered against them by Willis under which property was sold; thereafter, the executors, who were exempted from the control of the County Court, were removed, and Todd was appointed administrator de bonis non with the will annexed. The administrator brought suit to set aside the sale of the property made under execution against the

executors, and it was contended that, as they were independent executors, the administrator could not maintain the action; but this court held that the management of the estate by the independent executors was an *administration* of it under the law, and that the administrator de bonis non with will annexed succeeded the executors and continued the administration, and might maintain the action, because the executors whom he succeeded could have maintained it. Todd v. Willis, 66 Texas, 704; Rev. Stats., art. 2012.

The effect of the foregoing cases is to establish the proposition that, except in those articles which relate to acts to be done in the settlement of an estate, the term "executors" as used in our statutes includes independent as well as other executors.

The Constitution and the laws of this State confer upon county courts general jurisdiction of all estates of deceased persons, which attaches to the particular estate when proceedings for administration are begun in that court, and, having once attached, the jurisdiction will continue except as limited by the terms of article 1995 of the Revised Statutes. Construing the language of that article, this court has held that the allowance of claims against such estate need not be approved by the county court. McLane v. Belvin, 47 Texas, 493. The independent executor has authority, without an order of the court, to sell any property of the estate for the payment of debts, whether the will expresses such power or not. McDonald v. Hamblen, 78 Texas, 633; Howard v. Johnson, 69 Texas, 655. Likewise, it has been held that while the executor under such will continues to discharge his duties, the county court has no jurisdiction to settle the accounts between him and the heirs or devisees. Lumpkin v. Smith, 62 Texas, 249. The county court has no jurisdiction to set aside to the widow and children the exempted property or allowance in lieu of it when the estate is being administered by an independent executor. Runnels v. Runnels, 27 Texas, 516.

That article does not purport to withdraw the estate from the jurisdiction of the county court, but permits the testator to commit to his executor the performance of all acts in reference to the "settlement" of the estate, without control of the court. The estate remains under its jurisdiction; the administration is still pending; but the court is restrained by the terms of the law from taking any action in regard to the settlement of the estate while the executor appointed by the will continues to discharge his duties. The court may exercise its jurisdiction as to other matters, such as to annul a provision of the will or to require the executor to give bond and the like while he continues to act, but during that time, without action by the court, the executor can adjust and pay debts against the estate, and for that purpose may sell the property of the estate, can set apart the exempted property or pay the allowance in lieu thereof to the widow and children of the deceased, and, having paid the debts, may distribute the estate among the heirs of the devisees, because these are acts done by him in the "settlement" of the estate. With reference to such matters, the execu-

tor can do whatever the court could authorize to be done if the estate was under its entire control. McDonough v. Cross, 40 Texas, 280. The limitation placed upon the powers of the court operates to confer authority upon the executor to do without action of the court those things which it is prohibited to order. This is the measure of the *independent* power conferred by law upon the executor and the extent to which the prohibition upon the court goes. The prohibition upon the power of the court arises out of the existence of a trustee to whom the testator has chosen to confide those powers, and when the trust lapses the limitation upon the exercise of judicial control ceases likewise.

It is claimed that an independent executor, having once accepted, can not resign his trust, because there is no provision of the statute which authorizes him to do so. The rule invoked against the resignation of an independent executor applies with equal force to others. All executorships are personal trusts in the sense that they are based upon the confidence of the testator reposed in the person named; they are distinguishable from estates in trust in the fact that the latter attach to the property and will be preserved by courts of equity until executed, while the former relate alone to powers confided to the person named and cease to exist when not performed by him. Independent executors are distinguished from others by the greater powers intrusted to them. Neither class could resign as a matter of right without statutory authority, but the following article confers that right upon all alike: "If at any time an executor or administrator shall wish to resign the administration of the estate that has been committed to his charge, he shall present to the court in which the administration is pending an application in writing, stating such wish, and shall accompany said application with a full and complete exhibit of the condition of the estate, together with his administration account, which exhibit and account shall both be verified by affidavit." Rev. Stats., art. 2030.

This article is not less comprehensive than others which have been held to embrace independent executors. If the estate remains under the control of the court for general purposes after compliance with article 1995, as we think it does, then it is consistent with the policy of the law that an independent executor should be permitted to resign, and we see no sound reason why the above article should not be construed to embrace all executors.

The contention that an independent executor can not resign his trust is presented with much force by Judge Williams in the able opinion written by him in this case, but it rests mainly upon the proposition that the estate was withdrawn from the jurisdiction of the County Court by the probate of the will and the return of the inventory and list of claims and that the general provisions above quoted, authorizing the resignation of executors and the appointment of successors, do not apply to independent executors. We think that in this respect the learned judge has misinterpreted the language of article 1995. If that article read, "Any person capable of making a will may so provide in his will

that no other action shall be had in the county court in relation to his estate than the probating and recording of his will," etc., the position that the estate was withdrawn from the court might be maintained, because the limitation would be as broad as the entire probate jurisdiction; but we think the decisions which we have cited clearly show that the language used has the effect only to suspend the power of the court over the executor so far as he is engaged in the *"settlement"* of the estate.

We answer that the County Court of Smith County had authority to accept the resignation of the executor, Arch Murphy, Jr., and to appoint H. M. Whitaker administrator de bonis non of the estate.

Questions 4 to 7 inclusive present abstract questions of law to which we are unable to make answers that would apply to any given state of facts alleged in the petition. We must therefore decline to answer those questions because they do not comply with article 1043, Revised Statutes. Railway v. Belcher, 88 Texas, 552; Cleveland v. Carr, 90 Texas, 393; Bank v. Templeton, 90 Texas, 503.

### ON MOTION FOR REHEARING.

#### Delivered January 9, 1899.

BROWN, Associate Justice.—Upon re-examination of the question, we have concluded that we can properly answer the sixth question propounded by the court, which reads as follows: "Is it competent in this proceeding for the plaintiffs to make their claim to one-half of the real property sold, which they inherited from their mother, the ground for reviewing the orders made in the administration of their father's estate, because such orders were for the sale of the whole property?" We construe this question to relate only to the review of orders of sale, and not to other orders made in course of the administration, and to the question so understood we answer as follows:

The plaintiffs have not the right to prosecute a writ of certiorari from the probate court to the District Court for the purpose of reviewing orders of the probate court made in the administration of the estate of A. M. Murphy, Sr., deceased, which directed the sale of lands, the community property of A. M. Murphy and his wife, who died prior to the death of her husband, there being no debts against the community estate.

The plaintiffs, as heirs of their mother, were not parties to the administration upon the estate of their father and are not bound by the orders of the probate court so far as they affect the interest which they inherited from their mother in the community estate. Thompson v. Cragg, 24 Texas, 582; Cole v. Grigsby, 89 Texas, 223. Those orders and sales do not affect the title of the plaintiffs in the land sold in so far as they claim under their mother, unless the sale was ordered and made to raise money with which to pay the community debts of A. M. Murphy and

his wife. Soye v. McCallister, 18 Texas, 100; Carter v. Conner, 60 Texas, 52; Moody v. Butler, 63 Texas, 210.

A purchaser under such order who claims that the sale has the effect to pass the right of the heirs of the wife must establish the fact that the sale was made to pay a debt of the community. Moody v. Butler, 63 Texas, 210. In the case last cited, the court, speaking by Chief Justice Willie, said: "In order to give the deed of Joel Clapp's executor the effect of passing title to the entire land, as well that portion of which he died possessed as of the share inherited by the children from their mother, it was necessary that there should have been community debts of Joel Clapp and wife existing at the time the land was sold by Clapp's executor. Sanger v. Moody, 60 Texas, 96. The burden of proving this fact was upon the parties attempting to give this effect to the deed." In Moody v. Butler, Judge Willie said the presumption that such debts existed might be indulged when the deaths of the husband and wife occurred at or about the same time, and the same proposition was stated by Judge Wheeler in Soye v. McCallister, cited above. Undoubtedly the existence of community debts might be inferred from the proof of other facts which might be so cogent as to give to the presumed fact the probative force of positive evidence; still it would be an inference of fact and not a presumption of law. The distinction is well illustrated in this case. The law conclusively presumes, against the plaintiffs as heirs of the father, that the debts were valid and binding on his estate, but the orders and sales will not operate to convey their right derived from the mother unless the facts which give to them that effect be proved.

The rule is, that the burden of proof rests upon the person who claims to have acquired the title of the wife under such sale to prove the facts which give that effect to the proceedings of the court. The existence or nonexistence of such facts is the subject of proof in each case, and there is no reason for permitting the plaintiffs, who were not parties to the orders of court sought to be reviewed and who are not concluded by them, to sue out a writ of certiorari and have those orders reviewed by the District Court.