## STEPHENS v. DENNIS et al.
### No. 1271.

Court of Civil Appeals of Texas. Eastland.
May 18, 1934.

Rehearing Denied June 15, 1934.

G. B. King, of Albany, and J. B. Dibrell, Jr., of Coleman, for appellant.

Homer T. Bouldin, of Albany, and Bouldin & Bouldin, of Mineral Wells, for appellees.

LESLIE, Justice.

W. H. Stephens instituted this suit in trespass to try title against Lee Dennis, John S. Dennis, W. T. Dennis, Julia E. Gill, and husband, D. G. Gill, Frank Huskins, Howard N. Huskins, Helen Taylor, and husband, Auverne Taylor, Gracie Lee Ellis, Sam Ellis, Jr., Sam Ellis individually and as guardian of the person and estate of Gracie Lee Ellis and Sam Ellis, Jr., to recover 246 acres of land out of section 45, Lunatic Asylum lands, Shackelford county, Tex. Defendants Lee Dennis, W. T. Dennis, Helen Taylor, and her husband, Auverne Taylor, answered by general demurrer, general denial, and presented a cross-action in trespass to try title to recover the identical lands from the plaintiff, W. H. Stephens. The cause was tried before the court without a jury, and the judgment, upon proper pleadings, disposed of each of the defendants and his alleged interests in the subject-matter of the litigation, and the court awarded to Lee Dennis, W. T. Dennis, and Helen Taylor a judgment for the title and possession of the land in controversy, together with the cancellation of the deed whereby the executor of the estate of Amanda Dennis had conveyed the same to the plaintiff, W. H. Stephens. From the judgment in favor of the three last named parties, W. H. Stephens prosecutes this appeal.

The 246 acres of land were conveyed to W. H. Stephens in the satisfaction of a deficiency judgment against the estate of the deceased. The indebtedness was secured by a lien on the land and the judgment foreclosed the same. Amanda Dennis is the common source of title. She died February 8, 1929. Dosh Ellen Cruse, the invalid sister hereinafter spoken of, died June 22, 1929. This 246 acres was nonexempt property, and the last remaining asset of the estate. It was conveyed in satisfaction of an indebtedness that remained after the other portions of the estate had been devoted to the satisfaction of the debts of the deceased. Appellees are the children and devisees of the deceased. They contend that the deed executed by Price, the executor, to Stephens conveying the said tract of land is void, because the will of the de-

ceased provided that the same should not be sold until after the death of Lee Dennis, and, because that instrument further provided that when the "home place" was sold, etc., for the payment of debts, said 246 acres of land should be turned over to Lee Dennis to be controlled and managed by him, and to be no longer in the control of the executor.

Omitting the formal parts and the codicil as immaterial to the questions raised, the will of the deceased is to the tenor following:

"The State of Texas, County of Shackelford

"Know All Men By These Presents:

"That I, Amanda Dennis, a widow, and feme sole, widow of M. L. Dennis, deceased, of Shackelford County, Texas, being desirous to settle my worldly affairs while I have strength to do so and being of sound and disposing mind and memory, do make this my last will and testament, hereby revoking all wills by me at any time heretofore made.

"First: I direct that my body be buried in a decent and Christian-like manner, suitable to my circumstances and condition in life.

"Second: I desire and direct that my just debts be paid out of my personal money on hand at my death, but if there is no money on hand sufficient to take care of said debts, expenses of last sickness and funeral expenses, then it is my will that all of said debts and expenses shall be paid out of the proceeds of my interest in the 'Home Place' in section fifteen, Lunatic Asylum Lands, this County and State, or if the heirs of mine hereinafter named do not desire to sell said property to pay off said debts and expenses, then said heirs shall pay off said debts prorata as their inheritance of said property shall appear under this instrument.

"Third: It is my will and desire that my property, real and personal, shall become the property of my children and their descendants, as follows:

"That my sons, Lee and W. T. Dennis, and my daughter Mrs. D. J. Gill shall inherit three-fourths (¾ths) of my half interest in section 15 above described, and the interest of each child to be the same or ¼th undivided interest in the land and all oil belonging to me or that shall be obtained from said land, shall go to each of said children, and the remaining one-fourth interest in said land and oil as described above shall go to the five (5) children of my deceased daughter, Mrs. Sam Ellis, the said five children to share equally with each other in said undivided (¼th) one-fourth interest in my property above described.

"The two hundred forty six (246) acres out of Section Forty-five (45), Lunatic Asylum Lands, Shackelford County, Texas, I give, bequeath, and demise to my beloved son, Lee Dennis, during his lifetime, to control and manage as he sees fit, subject to his taking care of my invalid sister, Dosh Elen Cruse during her lifetime; but under no circumstances shall said two hundred forty six (246) acres, nor any improvements thereon be sold, conveyed, transferred or encumbered in any manner whatsoever during the lifetime of Lee Dennis by Lee Dennis or anyone else.

"I further direct that my beloved invalid sister, Dosh Elen Cruse shall be taken care of out of the income from said 240 acre tract of land above described during her lifetime, whether it be during the lifetime of Lee Dennis or after his death, and if the said Lee Dennis shall die before the death of my sister, said 240 acres of land, all improvements thereon and income therefrom of any kind, nature or description, shall be burdened with the care and expenses of my sister, Dosh Elen Cruse.

"Subject to the care and expenses of my sister, Dosh Elen Cruse, I give, bequeath and demise said two hundred forty-six acres (246) above described, to my sons, J. S. Dennis, W. T. Dennis, my daughter, Mrs. D. J. Gill; to my grandchildren, the children of Mrs. Sam Ellis, one portion for all five of them or their respective portions to their descendants, and one portion to the two children of my son, Lee Dennis, or their descendants; making five portions to be divided an undivided one-fifth (⅕) interest in and to said land, improvements thereon and income from said land of any kind or nature whatsoever, to each of my children, or to their children or descendants as herein named, so that each child of mine shall receive an undivided one-fifth (⅕th) interest, and their children in the event of the death of said child, shall inherit their parents prorata part of said estate.

"The above paragraph of this instrument, to-wit: the giving of said two hundred forty (240) acres, to all of my children and their descendants except Lee Dennis, shall not take effect until after the death of the said Lee Dennis.

"In the event of the death of any of my children or their descendants, the prorata share of said deceased child or their descendants shall vest in the descendants of said deceased person.

"I hereby constitute and appoint Dodd Price, executor of this, my last will and testament, and direct that a bond be required of him of $5,000.00 as executor, the cost of which shall be paid for by the heirs of the Home Place named herein, and that he shall receive for his services the sum of $100.00 to be paid by the heirs of said Home Place.

"It is my will and desire that as soon as my estate so far as the Home Place is concerned, can be settled up and the expenses called for herein to be paid by the Home Place or the heirs thereof, are paid that the said Dodd Price be released from all connection with my said estate, and thereafter that my other place be turned over to Lee Dennis or in case of his death before that time, to be handled as herein called for.

"It is my will that no other action shall be had in the County Court in the administration of my estate than to prove and record this will and to return an inventory and appraisement of my estate and list of claims."

No provision of the foregoing will has ever been annulled, or set aside by any proceeding in the probate court of Shackelford county, Tex.

■ The first question presented is: Does the will by its terms constitute Dodd Price independent executor of the estate of the deceased? We think this question must be answered in the affirmative. The language of the will withdraws the estate from the control of the probate court. That provision of the will is in substance the same as article 3436, R. S. 1925, granting such power to one capable of making a will and desirous of avoiding the cost and delay incident to the regular administration through the courts.

True, the will provided that the executor execute a $5,000 bond, but this fact constituted no restriction on the powers granted the executor. Neither does it evidence any intention on the part of the testatrix to grant the probate court supervision over the acts of the executor in the administration of the estate. Epperson v. Reeves et al., 35 Tex. Civ. App. 167, 79 S. W. 845 (writ refused). The direction in a will that no bond be required of the executor does not necessarily withdraw the estate from the control of the probate court. Smithwick v. Kelly, 79 Tex. 564, 15 S. W. 486; Lewis v. Nichols, 38 Tex. 54. The converse, as in the instant case, must necessarily be true. The requirement in a will, or the failure to require therein, a bond of the executor does not necessarily affect the independent administration under the will. Frame v. Whitaker (Tex. Civ. App.) 7 S.W.(2d) 140; Dwyer v. Kalteyer, 68 Tex. 554, 5 S. W. 75; Roy v. Whitaker, 92 Tex. 346, 48 S. W. 892, 49 S. W. 367; Stevenson v. Roberts, 25 Tex. Civ. App. 577, 64 S. W. 230; Hamm v. Hutchins, 19 Tex. Civ. App. 209, 46 S. W. 873; 13 Tex. Jur. p. 763, § 188 et seq.

■ The second question presented by the assignments and propositions is: Does the will of the deceased deny the independent executor the power to sell the 246 acres of land for the purpose of paying her debts in the event the remainder of her estate should prove to be insufficient for that purpose? It is the appellees' contention that there is a provision in the will denying such authority and that the same has never been set aside by a proceeding in court, and that, therefore, the deed executed to Stephens by the executor is void. That provision of the will reads:

"The 240 acres out of Sec. 45, Lunatic Asylum Lands, Shackelford County, Texas, I give, bequeath, and demise to my beloved son Lee Dennis during his lifetime to control and manage as he sees fit, subject to his taking care of my invalid sister Dosh Elen Cruse during her lifetime; but *under no circumstances shall said 246 acres, nor any improvement thereon, be sold, conveyed, transferred, or encumbered in any manner whatsoever during the lifetime of Lee Dennis, by Lee Dennis, or anyone else.*" (Italics ours.)

This contention of the appellees is based upon the quoted provision of the will and article 3433 of the Revised Statutes of 1925, which reads as follows:

"When a will has been probated, its provisions and directions shall be specifically executed, unless annulled or suspended by order of the court probating the same in a proceeding instituted for that purpose by some person interested in the estate. Such proceeding shall be by application in writing, filed with the clerk of the court, setting forth the objectionable provisions and directions in the will, and the grounds of objections."

We do not sustain this contention. We do not construe the will as denying the executor the power to sell the land in payment of the debts which could not be liquidated by the sale of the other portions of the estate. The above provision of the will, a part of which we italicized, was not directed to the executor, or intended as a limitation on his exercising the usual and customary powers incident to an independent administration. That provision does not expressly include the

executor, either by name, or official capacity, as one sought to be restrained from selling the property. Lee Dennis is expressly forbidden to sell it during his lifetime, and if the phrase, "anyone else" included the executor, then such inhibition on him must be gathered from the will as a whole, and not based on that detached provision alone.

 In construing a will, the intention of the testator is a paramount consideration, and all its provisions must be looked to for the purpose of ascertaining the real intention of the maker. If such intention can be ascertained from the language of the instrument, then any particular paragraph or provision of the will, which taken alone, would indicate a contrary intention, must yield to the intention manifested by the instrument as a whole. McMurry v. Stanley, 69 Tex. 227, 6 S. W. 412; Dulin v. Moore, 96 Tex. 135, 70 S. W. 742; Cleveland v. Cleveland, 89 Tex. 445, 35 S. W. 145; Simpkins, Administration of Estates (2d Ed.) pp. 704–706; 40 Cyc. pp. 1382, 1386–1388, 1392, 1393, 1396, 1407–1408. In other words, a will is not to be construed by parts, but in its entirety, and as often said, the testator's intention is to be ascertained from everything within the four corners of the instrument. 28 R. C. L. p. 215, § 175 et seq. In the same text, section 167, p. 207, the rule is stated to be that all parts of a will are to be construed in relation to each other so as to form one consistent whole, if possible. That the words in each paragraph of a will should be given such force and effect as to harmonize the whole instrument, and to permit all its parts to stand together.

Looking at this will as a whole, and in the light of the rules stated, this court is of the opinion that it does not forbid the sale of the land by the executor for the payment of the debt. With due attention she provided for her burial in a "Christian-like manner," and passed immediately to the consideration of the payment of her just debts. In that, she gave specific directions. There is not an expression in the will that such debts, in whole, or in part, should be repudiated or hindered in payment. The most that can be said of her attitude toward an adjustment of her debts is that she overestimated the value of her estate in comparison with the amount of claims charged by the statutes against it.

The second provision of her will recognizes the priority of the creditors' claims over the rights of the devisees, etc. She desired her debts paid, if possible, out of money on hand, but in the event of the insufficiency of that fund to meet them, she provided that both debts and funeral expenses be paid from the proceeds of her interest in a section of land called the "home place." At this point she provided that if the heirs did not desire to sell said property to pay "said debts and expenses," that they should "pay said debts pro rata as their inheritance * * * appears. * * *" She did not specify that they could obtain their inheritance by merely paying so much of the debts as the designated property might pay, or sell for, but she required them to pay off said "debts and expenses," by which she meant all the debts of the estate and funeral expenses.

In the third provision of the will, she bequeaths in fee simple all her estate to her descendants, except that she devised to Lee Dennis a life estate only in the 246 acres of land, with the remainder to her other descendants. In this section of the instrument she nominated Dodd Price independent executor of her estate, and in the last paragraph she provided:

"It is my will and desire that as soon as my estate, so far as the home place is concerned, can be settled up and *the expenses called for herein to be paid* by the home place or the heirs thereof, *are paid*, that the said Dodd Price be released from all connection with my estate *and thereafter* that my other place be turned over to Lee Dennis, or in case of his death before that time, to be handled as herein called for." (Italics ours.)

As noted, the testatrix deemed other portions of her estate to be sufficient to pay all debts and funeral expenses, but in the will generally she recognized that her debts were necessarily a first charge against her entire estate, including the 246 acres of land. This is apparent from the fact that she provided in the will that this tract of land should not be turned over to Lee Dennis until after the "expenses called for herein to be paid by the home place, or the heirs thereof, are paid." When that should have been done, and not before, Dodd Price, the executor, was to be released from further connection with the estate. The expression "expenses called for herein to be paid" has direct reference to, and embraces her just debts and funeral expenses. The payment of these necessarily preceded the executor's severance of relation from the estate.

Had she intended to prevent the application of the 246 acres of land to the payment of her debts, if found necessary, she would not have postponed the delivery of the possession thereof to Lee Dennis until after the

payment of said expenses, etc. More than likely she would have directed that this land be immediately delivered to Lee Dennis to the end that the income therefrom could be at once devoted to the care and support of the invalid sister.

Further, after Dodd Price was "released from all connection" with the estate, this tract of land was to be turned over to Lee Dennis; the testatrix used the word "thereafter" in this connection.

Unquestionably the will left the tract of land in the possession of the executor until after the payment of the debts and expenses. This demonstrates that the prohibition against the sale of the land in Lee Dennis' lifetime was not intended as a restraint on the executor's right to sell and apply it on debts, but a restraint upon alienation by Lee Dennis, the devisees, or their legal representatives. This restraint became operative on these parties only after the land passed under the will from control of the executor into the possession and control of the life estate devisee.

Further, in the very provision of the will devising the life estate in the tract of land to Lee Dennis, and giving the management and control "as he sees fit, subject to his taking care of my invalid sister," there follows the particular provision at the base of this lawsuit, viz., "but under no circumstances shall the 246 acres, or any improvement thereon be sold, conveyed, transferred, or encumbered in any manner whatsoever during the lifetime of Lee Dennis, by Lee Dennis, or anyone else." In other words, in the very sentence in which Lee Dennis was given management or control of the land, the power to sell or encumber it was withheld from him. The authority to do so was withheld from "anyone else." This last expression might embrace a guardian of Lee Dennis in the event of an unexpected incompetency on his part, and the appointment of a guardian for him. But whoever may come within the terms of "anyone else," the restraint operates upon such persons only after control and management of the property shall have passed from the executor to the life estate devisee, an event which, as pointed out, could not take place until the "expenses called for herein to be paid" were paid by the executor.

This view or construction of the will brings all its provisions into harmony with each other, and leaves it undisturbed in its entirety. It has the further merit of imputing to the testatrix a desire to be just before being generous, and to make a lawful disposition of her estate. It does not attribute to her an intention to disregard the just claims of her creditors.

Hence, we conclude that the executor's deed to the land in question, sought to be canceled by the cross-action, is not void, but is in all respects valid as a conveyance of that property to the plaintiff, Stephens.

As warranting the construction of said will that it was not the intention of the testatrix to deny the right and power to sell the land in controversy for the purpose of paying said debt, we cite the opinion of the Court of Civil Appeals in the case of Hughes v. Mulanax, 157 S. W. 217, 219. That will, if it had been "literally construed," would have contained provisions as to payment of debts and sale of property in conflict with each other. The court held:

"These conflicting provisions create an ambiguity, which we think should be solved by holding that it was the intention of the testator that all of his just debts should be paid, and that, if necessary to do so, his real estate might be sold for that purpose. One of the rules for the construction of a will is that, where the testator's intention as expressed in his will is ambiguous or obscure, such a construction should be adopted, if possible, as will dispose of his property in a just, natural, or reasonable manner. 40 Cyc. 1411. That rule, we think, has application to the will under consideration, and justifies the conclusion at which we have arrived."

We find no conflict in the provisions of the instant will, but certainly that is the most that could be said of them. Granting that such exists, then the rule stated in the excerpt above should be employed and the conveyance upheld.

■ Further, and independent of the foregoing conclusions, if the provision in the will purporting to prohibit the sale of the 246 acres of land by "Lee Dennis, or anyone else" could be construed as denying the independent executor, or the probate court, the power to sell the same for the payment of the debt for which the land was conveyed, then such provision under the facts of this case would be null and void. Such attempted withholding of the asset of the estate from such application would be in contravention of the statutes which make such debts a charge against the nonexempt property superior to the rights of heirs and devisees therein. We regard this as a well-established proposition under the following statutes and authorities: Articles 3281, 3282, 3314, 3630, 3312, R. S. 1925; Moore

& Son v. Moore, 89 Tex. 29, 33 S. W. 217; Morrell v. Hamlett (Tex. Civ. App.) 24 S.W. (2d) 531; Roy v. Whitaker, supra; Yeager v. Bradley (Tex. Civ. App.) 246 S. W. 688; Fernandez v. Holland-Texas, etc., Bank (Tex. Civ. App.) 221 S. W. 1004; Stevenson v. Roberts, 25 Tex. Civ. App. 577, 64 S. W. 230; Hughes v. Mulanax, 105 Tex. 576, 153 S. W. 299.

From the foregoing statutes it will be observed that the power to devise land in Texas is a statutory right with definite limitations. The outstanding limitation on the right of such testamentary disposition of property is found in article 3314, supra, to the effect that:

"When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will shall vest immediately in the devisees or legatees; * * * subject however, to the payment of the debts of the testator * * * except such as may be exempted by law. * * *"

In the earlier part of this opinion we cited the opinion of the Court of Civil Appeals in Hughes v. Mulanax on the rule of construction of the will granting that it presented an ambiguity or obscurity in its parts. The opinion of the Supreme Court in that case (105 Tex. 576, 153 S. W. 299, 301) in answer to certified questions is now cited as in point on the authority of the independent executor in the instant case to convey the 246 acres of land in payment of said debt, and that without the necessity of a proceeding under article 3433, R. S. 1925, to annul or set aside the provision in the will which appellees contend has the effect of denying the executor, or probate court, the authority of sale for payment of debts. The effect of this opinion by the Supreme Court is to hold that if the restriction against the sale by the executor of the testator's property to pay his debts was in conflict with the provision in his will to pay them, the former should yield to the latter. In certifying the questions, the Court of Civil Appeals was of the opinion that the provision in the will restricting sale of the property withdrew from the executor, or the probate court, the power to sell the same to pay debts of the testator until such prohibitory provision was set aside by a proceeding instituted in a court of competent jurisdiction for that purpose. The contention was based on article 3433, supra, and kindred statutes, but the Supreme Court rejected that contention and plainly held in effect, that the direct sale of the property to pay the debts made under an order and approval of the probate court was valid, and that a like sale by an independent executor was valid. The pertinent portion of that opinion is here given:

"If the legal effect of the will was to remove the estate from the jurisdiction of the probate court, its effect, when properly construed, was also to confer upon the executor authority to sell land to pay debts. It would seem that the provisions in paragraph 6, setting out restrictions upon the authority of the executor to sell or mortgage land, if in conflict with directions to the executor to pay all the just debts and in all things to act as to him may seem best for the interest of the estate, and independent of the control of the probate court, should yield to them; and, moreover, that said restrictions should, perhaps, be held to apply to only lands which might be held by the executor merely as a trustee for the minor devisee, after payment of said debts. On the other hand, if the will left in that court jurisdiction over the estate, the court had the right to order the land sold for the payment of debts. The result, in either contingency, is to uphold this conveyance by the executor."

Such is the necessary effect of the above statutes and the authorities construing them. The whole conclusion of the Supreme Court is warranted, for the authorities generally are to the effect that an independent executor may do whatever is necessary for the full and complete settlement of the estate which he might do under authority and order of the court if he were charged with the administration subject to its control by the will. Roy v. Whitaker, 92 Tex. 346, 48 S. W. 892, 49 S. W. 367; Stevenson v. Roberts, 25 Tex. Civ. App. 577, 64 S. W. 230; McDonough v. Cross, 40 Tex. 251; Yeager v. Bradley (Tex. Civ. App.) 246 S. W. 688 (writ refused, 114 Tex. 581, 278 S. W. 1115).

For these additional reasons, we think there can be no question about the authority of the independent executor to sell the land to the appellant, Stephens, in satisfaction of said debt.

For the reasons assigned, the judgment of the trial court will be reversed and here rendered in favor of W. H. Stephens, as against the appellees. In other respects the judgment remains undisturbed. It is so ordered.