**EDSALL et al. v. HUTCHINGS et al.**

No. 2019.

Court of Civil Appeals of Texas. Eastland.

June 21, 1940.

Rehearing Denied Sept. 20, 1940.

·John Lee Smith, of Throckmorton, and Fred T. Arnold, of Graham, for appellants.

Marshall & King, of Graham, for appellees.

FUNDERBURK, Justice.

Upon the marriage of Mrs. Addie B. Edsall on January 13, 1895, to R. W. Steele, there followed a partition between her and her five children of the real property belonging to the community estate of herself and her former husband, R. S. Edsall. Personal property consisting in part of a herd of cattle belonging to said community estate was not then, or thereafter, partitioned, but Mrs. Steele, nee Edsall, continued to handle said property, and on or about December 26, 1916 sold the cattle with their increase to A. B. Edsall for $6,000, evidenced by a note of the purchaser payable to Mrs. Addie B. Steele. Addie B. Steele and R. W. Steele had only one child, being Clara Steele who married T. Hutchings. R. W. Steele died intestate on January 7, 1932. Addie B. Steele died testate January 11, 1933. During the time Addie B. Steele and R. W. Steele were married to each other they acquired property consisting of a house and lot in Spring Creek, Throckmorton County, which after the death of R. W. Steele was sold and one half of the proceeds given to said Clara Hutchings. In addition to said house and lot there were rents and revenues from Mrs. Steele's separate real property and the increase of her separate personal property. All of this personal property was handled by Mrs. Steele as if it were her separate property.

By will made September 11, 1931 and probated, without contest, on January 29,

1933, Addie B. Steele bequeathed to her daughter Clara Hutchings "for her natural life and to her natural children," 345 acres of land "to be held in trust however for her and her children" by the executor and trustee "and subject to the further terms of this will." Another provision of the will read as follows: "That part of my estate which I have given to my son, H. Van Edsall, my daughters, Anna Edsall Williams, Clara Hutchings, and Minnie E. Calvert, is hereby given to my executor to be held in trust for them, for their natural lives and then to their natural children until they become 21 years of age; and my executor shall hold such property free from the control of any husband or any of my said daughters and shall keep said property rented, and out of the proceeds arising from the rent thereof he shall pay my said son H. Van Edsall and my daughters [naming them, including Clara Hutchings] * * * during their natural life the proceeds arising from such property so given to each of them and after the death of any of my said children whose property is held in trust the same shall continue to be held in trust by my executor and he shall pay over the proceeds arising from the rent and revenue of the property so allotted to such child, to his or her natural children, share and share alike, until such children shall arrive at the age of 21 and as soon as each of said children shall arrive at the age of 21 my executor shall pay over to them his proportionate part of his father's or mother's share as herein allotted * * * should my daughter, Clara Hutchings, die without issue, then her part shall pass and descend to her half brothers and sisters and subject to the trust provisions of this will."

Said will further declared "All of the property that I now have is my separate property and consists of land and personal property that was acquired by myself and first husband, R. S. Edsall and with one or two small exceptions of community property between myself and present husband, and in the disposition of my estate I have tried to take care of my children by both of my said husbands as well as take care of my present husband."

A. B. Edsall was named independent executor of the estate, as well as trustee for certain of the devisees. He was given the power and right to "sell any and all of my personal property, including notes and accounts at any time and to convert the same into cash * * * to lease and rent the land left in trust for grass, grazing and agricultural purposes and to receive the proceeds therefrom * * * to make, execute and deliver an oil or gas or other mineral leases on any land left in trust to him and sign and deliver division orders and collect rents, bonuses and royalties * * *."

The inventory and appraisement filed by said executor about January 24, 1933 listed as the only community property of Addie B. Steele and R. W. Steele said town lots, valued at $500. As separate property there was listed a note of A. B. Edsall payable to Addie B. Steele for $3,100 at 6 per cent interest due January 1, 1937. (This was a renewal of the $6,000 note aforesaid, less payments made thereon.)

On December 26, 1916, Addie B. Steele leased all her land to A. B. Edsall for grazing purposes for a term of five years, the consideration being $500 per year. This lease was renewed from time to time, the last renewal being October 31, 1932, and extending it to October 1, 1937. The annual rent of $500 was paid each year to Mrs. Addie B. Steele until her death. Thereafter it was accounted for by A. B. Edsall as executor up to the termination of the lease. On January 1, 1938, A. B. Edsall, as trustee, leased the land to Arthur Ben Edsall for a term of five years at 35¢ per acre.

On December 28, 1934, A. B. Edsall prepared a statement of receipts and disbursements showing the nature and disposition of the property which had come into his possession as executor and trustee under the will of his mother. A copy of this statement was furnished to Mrs. Clara Hutchings.

This is a suit (as its nature is disclosed by plaintiff's second amended original petition) brought by Clara Hutchings, joined by her husband J. T. Hutchings, and her son Jimmie Steele Hutchings, against A. B. Edsall individually and as trustee and executor under the last will of Addie B. Steele, and as guardian of one of his brothers, H. Van Edsall, a non compos mentis, and also against five brothers and sisters of A. B. Edsall (joining with the sisters their respective husbands) purporting, in a first count, to be an action of trespass to try title to a 1/6th undivided interest in and to the land owned by Addie B. Steele at the time of her death, and for partition thereof. In a second count there were allegations designed to show that rents and

---

revenues of the separate property of Addie B. Steele and the increase of separate personal property of Addie B. Steele was community property of R. W. Steele and Addie B. Steele; that Clara Hutchings was the sole heir of R. W. Steele; that said executor and trustee took possession of said property under the terms of his mother's will and that ½ of the value of said property, plus a 1/6th interest in the property amounting to the sum of $2,623.44 had been converted by the executor and trustee and for the recovery of which amount judgment was prayed. In addition there were other allegations designed to show that A. B. Edsall had been guilty of a violation of the trust imposed by said will to the damage of plaintiffs, and seeking his removal as such trustee; and also seeking a money judgment against him for the difference, between the rents and revenues received and paid by him and the rents and revenues which it was alleged should have been received and paid by him to the beneficiaries thereof under the terms of said will.

As to the claim of conversion, defendant A. B. Edsall pleaded limitation of two and four years, and also pleaded estoppel, the basis of the latter being that the personal property claimed to be converted had been disposed of by the terms of the will and that plaintiff Clara Hutchings had accepted benefits under the will.

In avoidance of the pleas of limitation, plaintiffs pleaded the coverture of Clara Hutchings; that A. B. Edsall had taken possession of the personal property under a continuing trust never repudiated; that Clara Hutchings was ignorant of the fact that the personal property of which the executor and trustee took possession was community property in which she had an interest as such; that A. B. Edsall had promised, and upon which promise she had relied, that he would deed her the property awarded him in trust for her if she would allow the will to be probated and that she did not discover her rights to community personal property of R. W. Steele and Addie B. Steele until about April 1, 1938.

There was a jury trial in which a great number of issues were submitted to the jury, some of which were found in favor of the plaintiffs and others in favor of the defendants.

The court gave judgment for the plaintiff Clara Hutchings against A. B. Edsall awarding recovery of $2,083.75 and removing A. B. Edsall as trustee and appointing Byrd F. Thorp in his stead as trustee, with authority to act as such upon giving bond as specified in the sum of $1,000. The judgment denied recovery of plaintiffs against any other of the defendants or for or against any of the other parties.

The defendants have appealed.

A. B. Edsall, in his different capacities, being the principal appellant and defendant below, will, for convenience, be referred to as defendant or by name; and Clara Hutchings, principal appellee and plaintiff below, will be referred to as plaintiff or by name.

The defendant's brief consists of 198 pages. There are 63 · propositions briefed under 55 assignments of error. To attempt even to state, or make identifying reference to, all these propositions, would alone extend the opinion beyond reasonable length. It is deemed not inappropriate, in connection with the above statement, to call attention to the wholesome provision of Rule 35, governing Courts of Civil Appeals (142 S.W. xiii), that "When the assignments of error are numerous, counsel should present propositions on those which are most important in the determination of the case, waiving" etc. Under the circumstances we shall discuss only such questions, without reference to how they are raised, as are deemed necessary to a proper disposition of the appeal. In one way or another, all the questions, we think, are sufficiently raised to invoke our jurisdiction to determine them.

It is unimportant to any question for decision that the suit in part purported to be an action in trespass to try title. The record shows conclusively that the land involved was the separate property of Addie B. Steele; that it was disposed of by her will which, without contest, was duly probated and under which Clara Hutchings has accepted the benefits, and in this suit asserts rights existing alone under said will. No question of title or right of possession existed.

No serious question we think is presented regarding the jurisdiction of the district court. Considering the jurisdiction of the court as in no way aided by the purported action of trespass to try title, it results that the question of jurisdiction must be determined with reference to two

other causes of action asserted. One was for conversion involving an amount exclusively within the jurisdiction of the district court. The other was for the removal of the independent executor and trustee of the estate of Addie B. Steele for alleged mismanagement of the trust estate. It is concerning the latter that the question of jurisdiction is presented.

The probate court has no jurisdiction to remove an independent executor because of mismanagement of the estate, except when, under provision of R.S.1925, Art. 3438, he has been required to give bond and has failed to do so, in which case, under provision of Art. 3441, the probate court has jurisdiction to order his removal. Perkins v. Wood, 63 Tex. 396; Jerrard v. McKenzie, 61 Tex. 40; Hocker v. Stevens, Tex.Civ.App., 42 S.W.2d 473. See, also, Roy v. Whitaker, 92 Tex. 346, 48 S.W. 892, 49 S.W. 367; Id., Tex.Civ.App., 50 S.W. 491, 495. Manifestly, that procedure and condition under which the probate court has jurisdiction is not applicable in this case.

The probate court not having jurisdiction we shall assume, without definitely deciding, that the district court had jurisdiction. The court certainly had jurisdiction of the suit insofar as it was one for conversion of an amount within its undoubted jurisdiction. Our conclusion as to the removal of the independent executor and trustee is such as to render the question of jurisdiction of no practical importance so far as the proper disposition of the case is concerned.

We are required to presume in support of the judgment, we think, that the evidence established conclusively plaintiff's plea of coverture interposed by her to avoid defendant's plea of limitation. The action to which the plea of limitations was directed was not "for the recovery of real property" as to which R.S. 1925, Art. 5518, applies to a married woman over 21 years of age, but an action included within those enumerated in R.S. 1925, Art. 5526, as to which Art. 5535 provides that limitation shall not run as to a married woman upon any such cause of action accruing during the coverture. Deaton v. Rush, 113 Tex. 176, 252 S.W. 1025; Dodson v. Isensee, Tex.Civ.App., 273 S.W. 634 and authorities cited.

This conclusion renders all other questions bearing upon limitations and the avoidance of the bar thereof and the sufficiency of the pleading thereof of no controlling importance.

Notwithstanding the conclusion that if the plaintiff had any cause of action for conversion her coverture prevented the bar of limitations, we think it was conclusively established that plaintiff was not entitled to recover anything for conversion. By her own pleadings plaintiff disclosed that she claimed and had received benefits under the will of Addie B. Steele to which in the absence of such will she would have had no right. She was the beneficiary in the trust created by the will to the rents and revenues during her life from 345 acres of land. In the absence of the will she would have been entitled to no more than a one-sixth undivided interest in such land. Part of her complaint against the trustee, disclosed by her pleadings, was designed to secure for herself greater benefits from the trust than she had been receiving. The will itself showed by express declaration that all the personal property to which the claim of conversion relates, or that from which as rents, revenues or increase it was derived, was disposed of by the will as the separate property of the testator. The plaintiff as a residuary legatee received some of that property, or the proceeds thereof, from the trustee. All the facts were known to her to which the law attaches the consequences of an election to take under the will. Plaintiff cannot, while appropriating the benefits conferred upon her by the will and seeking by the suit to have adjudged to her still greater benefits of the same nature, claim part of the property disposed of by the will as her own property, thereby, in effect, repudiating the right of the testator to dispose of it by her will. Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620, and authorities cited. The controlling principle is stated generally in the syllabus of the case cited as follows: "Where one elects under a will to accept the benefit therein granted he must adopt the contents of the whole instrument so far as it concerns him, and renounce every other right inconsistent with it." This suit does not involve a rejection of all claims under the will including, as would be necessary, a showing of a sufficient excuse for an apparent previous acceptance thereof on the ground of fraud, accident or mistake; but, on the contrary, the suit, as said before, seeks, in part, to

enforce rights under the will and to retain all the benefits provided by it.

No legally sufficient ground for the removal of the trustee was alleged, unless it was that the executor leased the land for 30¢ an acre, while its reasonable rental value, within the knowledge of the trustee, was 60¢ per acre. The will imposed no duty upon the independent executor and trustee to advise with plaintiff; to place grazing lands in cultivation, or any of the other things relied upon to show a breach of trust. Clearly, we think, the facts alleged show no breach of his trust by A. B. Edsall, unless he willfully leased the land to his son for 30¢ per acre, knowing that it was worth materially more and that he could have leased it for more. The evidence showed conclusively that the land was leased for 35¢ per acre, and, upon sufficient evidence, the jury found that its reasonable rental value was 35¢ per acre.

It is, therefore, our conclusion upon the whole case that the judgment should have been for the defendant, that the judgment of the lower court should be reversed and judgment rendered by this court to the effect that plaintiffs take nothing by their suit.

It is accordingly so ordered.