**Read KILLGORE, Appellant,**

v.

**ESTATE of Roberta M. KILLGORE,
Deceased, Appellee.**

No. 16017.

Court of Civil Appeals of Texas,
San Antonio.

June 14, 1978.

William H. Russell, San Antonio, for appellant.

Waynene C. Combest, Veitch & Britt, San Antonio, for appellee.

OPINION

MURRAY, Justice.

The single question in this case is whether the probate court has jurisdiction to remove an independent executor who is an incompetent.

On April 28, 1977, appellant's mother, Roberta M. Killgore, died, and appellant, Read Killgore, was named independent executor in the decedent's will. On June 30, 1977, appellant, Read Killgore, was adjudged non compos mentis and a temporary guardian was appointed. On August 31, 1977, the order of the court, admitting the will to probate and authorizing letters testamentary was entered, said order stating that ". . . in said will, decedent named Read Killgore as Independent Executor, to serve without bond, who is duly qualified and not disqualified by law to act as such and to receive Letters Testamentary; . ." On October 19, 1977, the court set aside that order on the grounds that Read Killgore had been adjudged non compos mentis on June 30, 1977, and appointed a temporary administrator with the will annexed.

We set out certain provisions of the Probate Code as originally enacted in 1955 and as amended in 1957, which are deemed particularly pertinent here:

Sec. 3, Definitions and Use of Terms

When used in this Code, unless otherwise apparent from the context:

.     .     .     .     .

(aa) 'Personal Representative' or 'Representative' includes executor, independent executor, administrator, temporary administrator, guardian, and temporary guardian, together with their successors. The inclusion of independent executors herein shall not be held to subject such representatives to control of the courts in probate matters with respect to settlement of estate except as expressly provided by law.

Sec. 145(h)

When an independent administration has been created, and the order appointing an independent executor has been entered by the county court, and the inventory, appraisement, and list aforesaid has been filed by the executor and approved by the county court, as long as the estate is represented by an independent executor, further action of any nature shall not be had in the county court except where this Code specifically and explicitly provides for some action in the county court.

Sec. 78

No person is qualified to serve as an executor or administrator who is:

.    .    .    .    .

(b) An incompetent.

Sec. 222.  Removal

.    .    .    .    .

(b) With Notice.

The court may remove a personal representative on its own motion, or on the complaint of any interested person, after the personal representative has been cited by personal service to answer at a time and place fixed in the notice, when:

.    .    .    .    .

(5) He becomes an incompetent, or is sentenced to the penitentiary, or from any other cause becomes incapable of properly performing the duties of his trust.

We think the Waco Court of Civil Appeals has correctly stated the test used to determine the extent to which the probate court can exercise its hold over an independent executor in the case of *Bell v. Still,* 389 S.W.2d 605 (Tex.Civ.App.—Waco 1965), adopted at 403 S.W.2d 353.

In interpreting any section of the Probate Code containing the word "executor," the courts have had to determine whether or not the limitation expressed in such section applies to both an ordinary executor and an independent executor.  Prior to the 1955 revision of the Code, it was generally held that only those statutes which dealt with matters other than the "settlement of the estate" applied to an independent executor. *Roy v. Whitaker,* 92 Tex. 346, 48 S.W. 892 (1898);  Woodward, *Some Developments in the Law of Independent Administrations,* 37 Texas L.Rev. 828 (1959).  The test under the present Sec. 3(aa) and Sec. 145, as stated in *Bell v. Still, supra,* appears as follows:

.    .    . (1) Whether removal of the independent executor for the assigned reasons requires the probate court to take action in connection with 'settlement' of the estate, and (2) whether the Code 'specifically and explicitly' provides for that action in the [county court].

Sections 149 and 214–217 of the Code provide the only method for removal of an independent executor by the Probate Code. These statutes specifically apply to independent executors.

The fact that the probate court cannot remove an incompetent independent executor is of doubtful wisdom.  Our Supreme Court concluded in *Bell v. Still, supra,* at page 353:

.    .    . The matter is a difficult one because doubts exist as to the wisdom of a policy under which an independent executor, accused of gross mismanagement of an estate, is not subject to removal by the probate court as any other executor or administrator.  This, however, is a matter within the control of the Legislature.  It is our opinion that the Probate Code did not change the rule previously existing that the probate court did not have this power unless the independent executor, properly appointed and qualified, was required to post bond and could not or would not do so.  We do not have here the question as to whether the district court has this power of removal.

We hold that Section 222 of the Code does not specifically and explicitly apply to independent executors.

The judgment of the trial court is reversed and appellant, Read Killgore, is ordered reinstated as independent executor of the Estate of Roberta M. Killgore, deceased.

CADENA, Chief Justice, dissenting.

Neither the provisions of the Probate Code[1] nor the decisions interpreting such provisions compel the unwise conclusion that the probate court cannot remove an independent executor who lacks the legal capacity to perform his duties.

I do not agree that *Bell v. Still*, 389 S.W.2d 605 (Tex.Civ.App.—Waco 1965), aff'd, with opinion of the Court of Civil Appeals adopted by the Supreme Court, 403 S.W.2d 353, 354 (1966), furnishes a definitive answer to the question involved in this case. (Since the Supreme Court in *Bell* adopted the opinion of the Waco Court of Civil Appeals, the opinion of the Waco court will be referred to in this opinion as that of the Supreme Court, although citations will, of necessity, refer to the Court of Civil Appeals opinion.)

*Bell* does no more than hold that the probate court lacks jurisdiction to interfere with an independent executor in matters involving the settling of the estate. As the Supreme Court pointed out (389 S.W.2d at 607):

> To permit the court to remove the trustee named by the testator for causes such as here charged, *which involve passing upon his conduct in settling the estate*, is to authorize accomplishment by obliquity what is prohibited to be done directly. *If the asserted grounds of removal concern the acts of the independent executor in the settlement of the estate*, as they do here, *in that respect the power to remove is the power to control.* (emphasis added)

Denial of the probate court's power to remove an independent executor in *Bell* was expressly based on the fact that to permit removal for mismanagement amounts to vesting in the probate court the power to control the conduct of the independent executor in the settlement of the estate. Since, in adopting the opinion of the Court of Civil Appeals, the Supreme Court expressed doubt "as to the wisdom of a policy under which an independent execu-

tor, accused of gross mismanagement of an estate, is not subject to removal by [a] probate court as any other executor or administrator" (403 S.W.2d at 353), the rule insulating an independent executor from removal should not be extended unless the probate court requires that conclusion, as the Supreme Court felt was the case in *Bell*.

The *Bell* decision is based primarily on the second sentence of § 3(aa) and the second sentence of § 145.

The first sentence of § 3(aa) merely provides that the term "personal representative," as used in the Code, includes an independent executor. The second sentence provides that the fact that the term "personal representative" includes an independent executor "shall not be held to subject [independent executors] to control of the courts in probate matters with respect to settlement of estates except as expressly provided by law."

The first sentence of § 145 merely provides that a testator may direct in his will that no action shall be had in the probate court "in relation to the settlement of his estate" other than the probating and recording of his will, and the return of an inventory, appraisement and list of claims of his estate. The second sentence then provides that when the will has been probated and the inventory, appraisement and list of claims have been filed by the executor and approved by the court, "as long as the estate is represented by an independent executor, further action of any nature shall not be had in the [probate] court except where this Code specifically and explicitly provides for some action in the [probate] court."

According to *Bell*, the effect of the provisions referred to in the two paragraphs immediately preceding "is to establish these general tests for ascertaining existence vel non of the power [to remove an independent executor]: (1) whether removal of the independent executor for the assigned rea-

---

1. Unless otherwise indicated, all statutory references are to sections of Tex.Prob.Code Ann. (1956).

sons requires the probate court to take action in connection with 'settlement' of the estate, and (2) whether the Code 'specifically and explicitly' provides for that action in the [probate court]." 389 S.W.2d at 606.

The two "general tests," as stated in *Bell*, present problems of interpretation of the language used in formulating the tests. Did the Supreme Court mean that an independent executor can be removed by the probate court *only if* removal for the "assigned reasons" requires the probate court to "take action in connection with 'settlement' of the estate," *and* the Code "specifically and explicitly" provides for "that action" by the probate court? If this be the correct interpretation of the *Bell language*, the result is that removal of an independent executor is impossible in cases where removal does not require that the probate court take action in connection with settlement of the estate, even if the Code contains explicit and specific provisions for removal. If we bear in mind that, traditionally, the purpose of independent administration has been to free the independent executor of control by the probate court with reference to matters involving settlement of the estate, it is clear that an interpretation of *Bell* as permitting removal only when removal involves meddling by the court in matters concerning the settlement of the estate must be rejected as sheer nonsense.

The only reasonable interpretation of the *Bell* tests is to require that the second "test"—specific provision in the Code—is irrelevant only where removal is sought because of conduct of the independent executor relating to settlement of the estate. This conclusion is almost inescapable if we bear in mind the language, already quoted, by which the *Bell* opinion points out that removal for mismanagement involves "passing upon his conduct in settling the estate," and that to permit removal for mismanagement amounts to a grant of power to the court to control "acts of the independent executor in the settlement of the estate."

The *Bell* test, then, may be restated as follows: (1) Does removal of the independent executor for the "assigned reasons" require that the probate court "take action in connection with the settlement of the estate?" If this question be answered in the affirmative, then we must ask: (2) Does the Probate Code "specifically and explicitly" vest the probate court with the power to take "that action"? It is clear that the term "that action" in the second portion of the test necessarily refers to the "action" referred to in the first portion—that is, "action in connection with the settlement of the estate," rather than to the act of removal.

This interpretation of the *Bell* "tests" is justified not only by the language used in the opinion when such language is construed in context—a case involving a charge of mismanagement, but also by the provisions of the Code itself.

The second sentence of § 3(aa) prohibits action by the probate court only "with respect to settlement of estates" in the absence of express Code provision for such action. If the action by the court does not involve matters with respect to the settlement of the estate there is nothing in the second sentence of § 3(aa) disabling the probate court from taking such action. Insofar as the second sentence of § 145 is concerned, the disability created must be interpreted in the context of the entire section. The first sentence permits a testator to direct that no "action," other than those enumerated, shall be had in the probate court "in relation to the settlement" of the estate. The prohibition in the second sentence against further action in the probate court, when read in the light of the first sentence, refers to further action in connection with the settlement of the estate.

This interpretation of the Code and of *Bell* in no way interferes with the realization of the purpose of provisions in a will for independent administration of an estate. It gives full effect to the testator's desire that the courts not interfere in matters involving settlement of his estate.

The *Bell* opinion expresses concern about allowing accomplishment by "obliquity" of

results which cannot be achieved directly. This expression of concern comes too late. It appears to be well settled that a district court can appoint a receiver to take control of an estate which is being administered by an independent executor. *Stanley v. Henderson*, 139 Tex. 160, 162 S.W.2d 95 (1942); *Metting v. Metting*, 431 S.W.2d 906 (Tex. Civ.App.—San Antonio 1968, no writ). In doing so, the courts have taken pains to insure that their action is deserving of the "obliquity" epithet by pointing out that although the appointment of a receiver necessarily divests the independent executor of the power to manage and control the estate, it is not necessary that the order appointing the receiver contain language removing the independent executor; such language would be "duplicative and unnecessary." *O'Connor v. O'Connor*, 320 S.W.2d 384, 391 (Tex.Civ.App.—Dallas 1959, writ dism'd). In any event, to allow removal of an independent executor for reasons which do not involve inquiry into the manner in which he is settling the estate is not to permit the probate court to take indirect action in matters concerning settlement of the estate.

To construe *Bell* and §§ 3(aa) and 145, as does the majority in this case, is to assert that the Supreme Court, in adopting the Court of Civil Appeals in *Bell*, fell into error when it said that the probate court lacks power to remove an independent executor "unless the independent executor, properly appointed and qualified, was required to post bond and could not or would not do so." 403 S.W.2d at 353. There is no provision in the Code which "specifically and explicitly" subjects an independent executor to removal by the probate court if he refuses or fails to post the bond required by that court. In fact, the Code contains no language, not even "unspecific and unexplicit" which permits removal for such cause, unless such authority is found in § 222(b)(3). The power of the probate court to require an independent executor to give bond is granted by § 149, which is found in Chapter 6, Part 4, of the Code, which deals with independent administration of estates. This grant of power contains no language authorizing removal of the independent ex-

ecutor if he fails to comply with the order requiring him to furnish bond. The only provisions authorizing removal of an executor or guardian for failure to furnish bond are found in Chapter 7, Part 2, of the Code, in §§ 214–217.

The provisions concerning removal for failure to file bond speak in terms of an "executor" or "guardian." There is no basis for holding that either term includes an independent executor. The term "personal representative," which does include an independent executor, does not appear in §§ 214–217. The result is that there is no provision for removal of an independent executor who fails to give the bond in the Code unless such grant of authority is found in § 222(b)(4), which permits removal of a "personal representative" (which term includes independent executor) because of failure to obey an order of the court having jurisdiction with respect to the performance of his duties.

At this point, it is in order to examine the Code provision, § 222, which authorizes removal of a "personal representative." The first portion of that section authorizes removal without notice of personal representatives "appointed under provisions of this Code." § 222(a). It can, perhaps be persuasively argued that, because summary removal is authorized only as to personal representatives "appointed under provisions of" the Probate Code, § 222(a), is not applicable to independent executors. Whatever may be the merits of this argument, § 222(b), which provides for removal of a personal representative only after such personal representative has been cited to appear and answer by personal service, is not limited to personal representatives "appointed under provisions of" the Probate Code. There can be no doubt, then, that § 222(b) is applicable to all personal representatives, including independent executors. There is nothing to prevent the application of such provisions to independent executors, except that §§ 3(aa) and 145, as interpreted in *Bell*, would prevent removal of an independent executor for mismanagement because removal on such grounds would in-

volve control of the independent executor by the probate court in matters relating to "settlement of estates." Assuming, as we must, that this is a correct interpretation of § 222(b)(4), which permits removal for gross mismanagement, when such section is read with §§ 3(aa) and 145, such holding, and the reasoning supporting it, cannot be given controlling effect when the removal is for causes which do not require the probate court to take action in connection with "settlement" of the estate.

Removal of an independent executor because he has lost the legal capacity to perform his duties, as authorized by § 222(b)(5), requires no inquiry into the manner in which he is managing the estate or into his conduct in the settlement of the estate. An "incompetent" independent executor is being removed not because of any mismanagement or other misconduct, but because he lacks the legal capacity to perform the acts necessary to settle the estate. Removal because of legal incapacity to perform does not involve intrusion by the probate court into the manner in which the independent executor is discharging his managerial and administrative responsibilities. Since passing upon the legal capacity of the independent executor to perform his duties does not involve passing judgment on the manner in which he is performing such duties, removal of such a personal representative for lack of legal capacity does not constitute an intrusion by the probate court into the forbidden area of "matters with respect to settlement of estates."

Removal of an independent executor for lack of legal capacity to perform his duties does not subject the independent executor to control by the probate court in matters relating to the settlement of the estate. Removal of such an executor for failure to give bond when required to do so under § 149, on the other hand, does of necessity inquire into his conduct in matters concerning the settlement of the estate, since the order requiring a bond can be based on a finding that the independent executor is guilty of mismanagement, a finding which requires inquiry into the area of matters relating to the settlement of the estate.

Where, because of mismanagement, an independent executor is required to give bond and is subsequently removed for failure to comply with the order, it is clear that the probate court is, by resort to "obliquity," meddling in matters relating to the settlement of the estate. Since, as a practical matter, an independent executor who has been found guilty of mismanagement and, because of such finding, required to give bond, will be unable to find sureties willing to vouch for his honesty, it is apparent that the requirement of a bond is, in fact, but the first step in the process of removal for mismanagement.

The conclusion that a probate court may directly remove an independent executor who has lost the legal capacity to perform his duties does not run counter to the notion that the Legislature, in adopting the Probate Code, did not undertake to make radical changes in the former probate law. Except for the oft-repeated dicta to the effect that an independent executor can be removed only for failure to file bond when required to do so under § 149, our attention has been called to no statutory provision or judicial holding to the effect that an independent executor cannot be removed on the ground that he has lost the legal capacity to act. In any event, the conclusion that an independent executor can be removed by the probate court for lack of legal capacity finds as much support in the Probate Code as the statement that an independent executor can be removed for failure to give bond, and removal for the former reason requires no inquiry into his conduct concerning matters relating to the settlement of the estate, as does removal for the latter reason.