Maston Nixon **CUNNINGHAM,**
**Appellant,**

v.

**PARKDALE BANK, Administrator With Will Annexed of the Estate of Nancy Nixon Cunningham, Deceased, Appellee.**

**No. C14–82–159CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 10, 1983.

Rehearing Denied March 10, 1983.

Charles R. Cunningham, Corpus Christi, for appellant.

Richard E. Flint, Head, Kendrick & Head, Corpus Christi, for appellee.

Before PAUL PRESSLER, MURPHY and ROBERTSON, JJ.

ROBERTSON, Justice.

This is an appeal from an order entered by the county court sitting in probate in a proceeding entitled "Estate of Nancy Nixon Cunningham, Deceased." At some point, someone has captioned this matter "Maston Nixon Cunningham, Appellant v. Parkdale Bank, Administrator with Will Annexed of the Estate of Nancy Cunningham, Deceased, Appellee." Parkdale Bank is not now nor has it ever been a party to this action. Appellant assigns fifteen points of error in his original brief and two additional points of error in his supplemental brief. However, appellant appears to accurately present the issues when, in his reply brief, he sets them out in the following manner:

1. Whether the probate court had jurisdiction to disapprove the final account;

2. If it did have such jurisdiction, whether it had jurisdiction to render a personal judgment against appellant; and

3. If it did have subject-matter jurisdiction to render such *personal* judgment, whether appellant, in the final account, judicially admitted that he had misappropriated funds.

We affirm.

A brief historical background is helpful. Nancy Nixon Cunningham died testate on

February 14, 1980, leaving three children: Maston Nixon Cunningham, Nancy Cunningham, and Susan Ellen Cunningham. In her will executed in 1957 she named her husband as executor and her father as substitute, both of whom predeceased her. On March 21, 1980, the court granted the application of the three children that Maston Nixon Cunningham be appointed independent administrator to serve without bond. He qualified and letters testamentary were issued on the same day. On March 26, 1981, Maston Nixon Cunningham filed "Application by Independent Executor to Resign" requesting permission to resign immediately, stating that within 30 days he would "promptly file, as the first amendment to this Application, a full and complete exhibit in final account, duly verified, showing the true condition of the Estate entrusted to his care." He further requested the court defer discharging or releasing him "until a final order or judgment shall have been rendered on his account." In his prayer he requested that Parkdale Bank

be immediately appointed as his successor, to serve as Administrator With Will Annexed, that this Court issue its orders requiring all estate assets in the possession of said Administrator to be immediately surrendered to said Administrator With Will Annexed and that upon the filing of the first amendment to this Application, supported by exhibit in final account, this Court shall set a date for hearing upon the matter, and shall order the clerk to issue Citation by posting notice to all interested persons, showing that proper application has been filed, and the time and place set for hearing, at which time said persons may appear and contest the exhibit in final account, together with such other orders as the Court may deem necessary or proper.

On the same day the court granted the application, accepted his resignation, ordered him to file a "Full and Complete Exhibit in Final Account" with notice to be given by posting, and appointed Parkdale Bank as Administrator with Will Annexed.

On May 1, 1981, Maston Nixon Cunningham filed "Exhibit and Final Account of Independent Administrator after his Resignation and Application for Discharge" which was executed under oath. In this exhibit he swore that the debts of the estate totaled approximately $160,000; there was "no money on deposit for the credit of the Estate;" and that he had "advanced" $26,938.79 to himself and $10,668.78 to his sister, Nancy, totaling $37,607.57. He carried these advances as estate "claims" against him and his sister. In this final account he requested the court *issue citation by posting*, that "the court . . . audit, settle, and approve this account," and discharge him pursuant to the provisions of Tex.Prob.Code Ann. § 221 (Vernon 1980).

In accordance with his request, citation was issued and ordered posted, setting the date of the hearing for May 25, 1981. On June 4, 1981, the court entered its "Order Disapproving Exhibit and Final Account, Delaying Discharge of Independent Administrator and Judgment for Amounts Owing to the Estate." In said order it is recited that the court

proceeded to examine such Exhibit and Final Account, and having heard evidence for and against the same, and such Exhibit and Account having been examined and disapproved, and having considered all other things necessary for a determination of these matters, and the Court being satisfied that the matters entrusted to the Applicant have not been handled and accounted for in accordance with law, and that the Applicant has improperly disbursed, from said Estate, cash in the amount of Thirty-Seven Thousand Six Hundred Seven and 57/100 Dollars ($37,-607.57), which funds have not been accounted for or reimbursed by said Applicant, and which disbursements, were judicially admitted and stipulated by Applicant in the Exhibit and Final Account filed under oath in this cause by the Applicant.

The court then disapproved the exhibit and final account; ordered any portion of the estate remaining in possession of applicant (appellant) be delivered to Parkdale Bank; and ordered "at such time as it has been

satisfactorily shown to the court that such delivery has been made *and that Applicant has complied with all other orders of this Court with relation to such Estate, Applicant shall be discharged, but Applicant shall not be discharged until he has complied with all orders of this Court."* (Emphasis added). The order then concludes:

The Court further finds that there is a deficiency in the funds now available to the Estate in the net amount of $37,-607.57, which funds were improperly disbursed by Applicant from said Estate; it is therefore

ORDERED, ADJUDGED and DECREED that Parkdale Bank, Administrator With Will Annexed, do have and recover judgment of and from Maston Nixon Cunningham, individually, the sum of $37,607.57, plus interest and costs for all of which let execution issue if not duly paid.

It is finally ORDERED, ADJUDGED and DECREED that nothing herein shall limit the rights of Parkdale Bank, Administrator With Will Annexed, from exercising its rights as representative of the Estate to obtain a separate judgment against Maston Nixon Cunningham, Individually, for damages and costs as authorized by Section 245 of the Texas Probate Code.

Subsequently, Maston Nixon Cunningham filed a motion and an amended motion for new trial, and from the denial thereof, he gave notice of appeal.

 In his first and second points of error appellant contends the court erred because it did not have jurisdiction to disapprove the final account. He argues that since he was an independent administrator the probate court, in the absence of express authority in the probate code to the contrary, does not have the authority to interfere with the settlement of an estate. We need not address the merits of appellant's contention for the reason that he invoked the jurisdiction of the trial court when he filed his application to resign and the final account, praying for his discharge "pursuant to the provisions of § 221 of the Texas

Probate Code." Appellant will not be heard to urge a position on appeal inconsistent with that he urged in the trial court. *Boatner v. Providence-Washington Ins. Co.,* 241 S.W. 136, 140 (Tex.Comm'n App.1922, judgmt adopted). His first two points are overruled.

In points of error three through ten appellant argues the court committed error in rendering judgment against him personally because (1) he "was not personally served with citation, did not waive service of process and did not enter his appearance in the case;" (2) there were no pleadings sufficient to support the judgment; and (3) there was no evidence to support the judgment.

 Appellant's argument and authorities in support of these points of error tend to complicate the simple issue which he overlooks. As was pointed out above, appellant, *himself,* invoked the jurisdiction of the court by filing the pleading upon which the court took action. Appellant, *himself,* asked that notice by posting be given. He cannot now be heard to complain that he was not personally served with process. The answer to his second argument that there are no pleadings is just as simple! He filed the motion to resign and the inventory asking the court to "audit, settle and approve this account" and discharge him. This constituted sufficient pleadings. *Kaphan v. Fidelity and Deposit Company of Maryland,* 564 S.W.2d 459 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.). Finally, his argument that there is no evidence to support the judgment is equally without merit. As pointed out above, appellant personally executed a sworn final accounting in which he admitted the wrongful conversion of $37,607.57. This was filed in support of his application to resign and with the prayer that the court "audit, settle and approve this account." We hold this to be a judicial admission and sufficient for the court to enter judgment without the necessity of other evidence to support it. *Humble Oil & Refining Co., et al. v. Webb et al.,* 177 S.W.2d 218 (Tex.Civ.App.—Texarkana 1944, writ ref'd w.o.m.). Section

221 of the Probate Code plainly places the duty upon the probate court to enter and compel compliance "with all lawful orders of the court with relation to his (the personal representative's) trust." As can be seen from the order entered in this case, the probate judge entered a personal judgment against Maston Nixon Cunningham for the misapplied funds "plus interest and costs for all of which let execution issue if not duly paid." In his points of error appellant does not contend the court lacked the general jurisdiction or power to enter a personal judgment against him, but only that the court did not have that jurisdiction because there was no service, pleadings, or evidence to support the personal judgment rendered against him. However, it is appropriate to point out that long ago, the United States Supreme Court spoke of a court's jurisdiction to enter a judgment in *Northwestern Fuel v. Brock*, 139 U.S. 216, 11 S.Ct. 523, 35 L.Ed. 151 (1891), when it stated:

> Jurisdiction to correct what had been wrongfully done must remain with the court so long as the parties and the case are properly before it, either in the first instance or when remanded to it by an appellate tribunal.

This principle authorized the trial court to render the judgment against appellant. In *Currie v. Drake*, 550 S.W.2d 736 (Tex.Civ. App.—Dallas 1977, writ ref'd n.r.e.) an order of the probate court requiring the guardian of an estate, pending in that court, to restore to the estate money improperly diverted from the estate was approved. In *Kaphan v. Fidelity and Deposit Company of Maryland*, a similar order was held not void. Appellant's points of error three through ten are overruled.

■ In each of points of error eleven through fifteen appellant contends the trial court "erred in finding or concluding, as the case may be" certain facts. While these points of error fail to bring the error allegedly complained of before us, even if we were to sustain any of them, they would not form the basis for any relief sought by appellant. Accordingly, they are overruled. In points of error sixteen and seventeen appellant contends the trial court erred in

holding appellant "judicially admitted" the misapplication of estate funds. We have already addressed this contention, above, and therefore overrule these points of error.

The order of the probate court is affirmed.

MURPHY, Justice, dissenting.

I respectfully disagree with the majority's opinion that under the facts of this case the probate court had jurisdiction to enter a personal judgment against Appellant. I believe there are several distinct reasons why no such jurisdiction existed.

Appellant's seventeen points of error in summary assert the lack of jurisdiction of the Probate Court to render a personal judgment against him. In claiming lack of jurisdiction, Appellant first argues that the court had no power to require Appellant as an Independent Administrator to submit an accounting or to disapprove it since Probate Code § 221 does not explicitly apply to Independent Administrators. Appellant further argues that no pleadings were filed by the judgment creditor, Parkdale Bank; no notice of any hearing was personally served on him; he did not waive service of process or make an appearance before the court; no evidence of mismanagement of estate funds was introduced; and no judicial admissions of guilt occurred, all of which render the judgment void.

The initial task in this case is the comparison and resolution of several apparently conflicting Probate Code provisions, while recognizing the proper limits of judicial inquiry.

## PROBATE COURT JURISDICTION OVER A RESIGNING INDEPENDENT ADMINISTRATOR

Tex.Prob.Code Ann. § 221 (Vernon 1980) contains the procedure for resignation of a "personal representative." Although the definition of "personal representative" in § 3(aa) of the Code seems to include independent administrators, that section further provides: "(t)he inclusion of independent

executors[1] shall not be held to subject such representatives to control of the courts in probate matters with respect to settlement of estates except as expressly provided by law." It has been held that the phrase, "settlement of estates," as used in § 3(aa), should be read in conjunction with § 145, in order to determine the extent of a court's power over independent executors. *Bell v. Still,* 389 S.W.2d 605, 606 (Tex.Civ.App.—Waco 1965), *aff'd, and opinion adopted,* 403 S.W.2d 353 (Tex.1966).[2] Probate Code § 145(h) states: "[W]hen an independent administration has been created, . . . as long as the estate is represented by an independent executor, further action of any nature shall not be had in the county court except where this Code specifically and explicitly provides for some action in the county court." Tex.Prob.Code Ann. § 145(h) (Vernon 1980). Thus, both § 3(aa) and § 145(h) relate to independent executors as they are engaged in the "settlement of estates". 389 S.W.2d at 606.

The initial question, therefore, is whether a probate court has the power to preside over the resignation of an independent administrator, or whether the act of resigning comes within the meaning of "settlement of estates" in § 3(aa) of the Probate Code, thereby excluding independent administrators from judicial control in those instances in which they resign. I would overrule Appellant's first two points of error which assert lack of probate court jurisdiction over resigning independent administrators, but my reasons for doing so are entirely different from that offered by the majority. By answering that question, I believe this to be a case of first impression.

First, it must be determined what is meant by the term, "settlement of estates," in § 3(aa) of the Probate Code, for, as has already been mentioned, when independent administrators are engaged in settling estates, they are not subject to control of the courts[3] in probate matters, except as the Probate Code expressly provides.

"Settlement" of an estate has been defined as the judicial or non-judicial adjustment of claims and demands in favor of and against the estate. 34 C.J.S. *Executors and Administrators* § 827 (1942). In contrast, an "account" of a personal representative is a statement of the conduct of the administration of the estate in the form of debits and credits, including itemized receipts and disbursements. *Id.* While an independent executor acts in his official capacity and "settles" the estate under his care by paying its debts and collecting amounts owed to it, he may, for example, sell property of the estate, set aside exempt property or pay the allowance in lieu thereof, and having paid all debts, he may distribute the estate among the heirs. *Roy v. Whitaker,* 92 Tex. 346, 48 S.W. 892, 896–897 (1898). *Cf.,* 34 C.J.S. *Executors and Administrators* § 827 (1942) ("settlement" of an estate in other jurisdictions does not include distribution of it).

In analyzing the issue of jurisdiction of a probate court over resignations of independent administrators under § 221 of the Probate Code, I think it useful to examine in some detail the closely related issue of the power of a probate court to remove an independent administrator.

Prior to the adoption in 1979 of § 149C which grants probate courts the power of removal, the Texas Supreme Court in *Bell v. Still,* 389 S.W.2d 605, held that the probate courts had no jurisdiction under § 222, as the Code then existed, to remove independent executors on grounds of misman-

---

1. The term "independent executor" includes the term "independent administrator". Tex. Prob.Code Ann. § 3(q) (Vernon 1980).

2. In light of the fact that the Supreme Court adopted the opinion of the Waco Court of Civil Appeals, citations will refer to the Court of Civil Appeals opinion.

3. It should be noted that the grant of jurisdiction to county courts in § 4 of the Code includes the power to issue letters testamentary and to "settle accounts of personal representatives", but their power to "settle estates" is limited to those "estates subject to administration or guardianship." Tex.Prob.Code Ann. § 4 (Vernon 1980).

agement of the estate. Two "general tests" were enunciated to justify that conclusion: (1) whether removal of the independent executor for the assigned reasons requires the probate court to take action in connection with the "settlement" of the estate, and (2) whether the code "specifically and explicitly" provides for that action in the latter tribunal.

*Id.* at 606.

Although is might appear superficially that the curtailment of probate court jurisdiction in § 222 over removal of an independent executor, as declared in *Bell v. Still*, would similarly limit jurisdiction over a resigning independent administrator in § 221, I find numerous differences between resignation and removal as these events are treated by the Probate Code.

In the first place, there has been considerable disagreement over the reach of *Bell v. Still* and the meaning of its "general tests". One view believes *Bell* implies that a statute will subject an independent executor to probate court control only "if the statute relates to some matter other than *settlement of the estate* and if the statute *specifically and explicitly* is made applicable to the independent executor." Note, *Administration of Estates—Control and Removal of the Independent Executor,* 21 Baylor L.Rev. 264, 265 (1969) (emphasis in original). Another interpretation was advanced by Chief Justice Cadena in his dissenting opinion in *Killgore v. Estate of Killgore,* 568 S.W.2d 182 (Tex.Civ.App.— San Antonio 1978, no writ), in which he paraphrased the *Bell* guidelines as follows:

(1) Does removal of the independent executor for the "assigned reasons" require that the probate court "take action in connection with the settlement of the estate?" If this question be answered in the affirmative, then we must ask: (2) Does the Probate Code, "specifically and explicity" vest the probate court with the power to take "that action"? It is clear that the term "that action" in the second portion of the test necessarily refers to

the "action" referred to in the first portion—that is, "action in connection with the settlement of the estate," rather than to the act of removal.

*Id.* at 185.

Justice Cadena then concluded that "removal of a personal representative for lack of capacity does not constitute an intrusion by the probate court into the forbidden area of 'matters with respect to settlement of estates'." *Id.* at 187. The issues of capacity to perform duties and the manner in which those duties are performed are distinctly separate. *Id.* Justice Cadena's interpretation of *Bell* has been well-received. *See, e.g.,* Note, *Independent Administration—Probate Court Lacks Authority to Remove an Independent Executor Adjudged Non Compos Mentis,* 10 St. Mary's L.J. 665, 669 (1979); and Galvin, *Wills and Trusts,* 33 S.W.L.J. 21, 26 (1979).

In addition to the linguistic and logical difficulties posed by the *Bell* decision, there are several other means, both within and outside the Probate Code, for removing an independent executor who mismanages the estate entrusted to him. Very likely in response to the *Killgore* decision, the Legislature in 1979 enacted § 149C which now enables a court to remove independent executors for various reasons, including § 149 of the Code. 389 S.W.2d at 307. However, Chief Justice Cadena disputes the availability of this option in his dissent in *Killgore.* 568 S.W.2d at 187. Furthermore, a district court under its broad equity powers may appoint a receiver in place of the independent executor. *Stanley v. Henderson,* 139 Tex. 160, 162 S.W.2d 95 (1942); Note, *Fiduciary Administration—Administration of Estates—Texas Probate Courts do not Have Jurisdiction to Remove an Independent Executor for Mismanagement and Malfeasance,* 45 Texas L.Rev. 352, 355–357 (1966).

Predecessors of § 222 explicitly provided for jurisdiction over removal of executors and administrators, just as predecessors of § 221 provided for their jurisdiction over

resignations. *See* Tex.Prob.Code Ann. § 222, Historical Note (Vernon 1980). Furthermore, the Texas Supreme Court in *Roy v. Whitaker* confirmed that even though courts had no power over responsible executors engaged in settlement of an estate, probate courts did have jurisdiction over resigning independent executors. 48 S.W. at 897.

In summary, I conclude that neither the holding of *Bell v. Still* nor various Probate Code provisions relating to removal of an independent executor controls the issue of probate court jurisdiction over a resigning independent administrator, such as in the case at bar. I do not believe that the Legislature intended independent administrators to be excluded from the resignation procedure of § 221, which applies to "personal representatives" but not expressly to independent administrators. Were that true, there would be no Probate Code provision governing resignations such as Appellant's.

For all the foregoing reasons, therefore, I would hold independent administrators are one kind of "personal representative" under § 221 and resignations of independent administrators are governed by that provision of the Probate Code.

## PROBATE COURT AUTHORITY UNDER § 221

Having determined that Appellant's resignation is subject to § 221 and does not come within the meaning of "settlement of estates," it must be next ascertained whether the action taken against him by the probate court comports with its powers under the statute.

A probate court is authorized by § 221 to do the following: to accept or reject the resignation of the personal representative; to appoint a successor representative; to hold an evidentiary hearing, the sole purpose of which is to examine, restate, audit, settle and approve the final account; to enter an order approving the account and requiring that the estate be transferred to the party entitled to receive it; and to discharge the resigning personal representative after he has complied with all requirements and orders. Tex.Prob.Code Ann. § 221 (Vernon 1980).

While it is clear under § 221(b) that the personal representative who is resigning should not be discharged "until final order or judgment shall have been rendered on his account," neither the current statute nor its predecessors contains any procedure to be followed in obtaining a "final order or judgment" when the court finds the account to be unacceptable.

Section 221(b) does not state, or even imply, that a probate court may enter a personal judgment against a resigning personal representative.

It would be improper for this or any other court to substitute its opinion for that of the legislature by pronouncing missing statutory language, thereby creating a jurisdictional power which simply does not exist under the present statute. In effect, the majority has done just that.

The majority relies on the case of *Northwestern Fuel Co. v. Brock*, 139 U.S. 216, 11 S.Ct. 523, 35 L.Ed. 151 (1891) as standing for the principle that a probate court generally has "jurisdiction to correct what had been wrongfully done" and thus had jurisdiction in this case to enter a personal judgment against Appellant, presumably for his "wrongful" use of estate funds. I cannot agree that *Northwestern Fuel* is even remotely germane to this case. In that opinion Justice Field was merely stating that when a court has no jurisdiction to hear a particular kind of case in the first place, but nonetheless erroneously enters a judgment in the misplaced lawsuit, that same court does have jurisdiction "to undo what it had no authority to do originally ... and to restore, so far as

possible the parties to their former position." *Id.* 139 U.S. at 219, 11 S.Ct. at 524. The *Northwestern Fuel* discussion of the right to restitution for a loss occasioned by enforcement of a judgment which has been subsequently reversed simply is not relevant to this case.

The majority has relied on other cases which I consider to be inapplicable. Two courts of civil appeals have expressed the opinion, explicitly or implicitly, that the Probate Code grants probate courts the power to hold personal representatives and guardians personally liable for amounts improperly withdrawn from the estate. In neither of these cases was there a separate lawsuit for damages filed against the fiduciary for breach of his duty, but rather the court imposed a personal judgment against him in the context of a hearing on his final account. I question the correctness of these holdings to the extent that they state or suggest that the Probate Code grants such authority to probate courts.

In *Currie v. Drake,* 550 S.W.2d 736 (Tex. Civ.App.—Dallas 1977, writ ref'd n.r.e.), the lack of a hearing for the presentation of evidence was cause for reversal and remand of the probate court's personal judgment against the administratrix for payment of attorneys' fees not incurred by the estate. However, in considering the separate issue of the administratrix' personal liability to the estate, the court in *Currie* found that "(s)ince her debt is personal and not in the capacity as administratrix, the probate court was correct in holding her individually liable for reimbursement." 550 S.W.2d at 739. The court also held that no separate lawsuit to recover property transferred under an erroneous judgment need be filed against the administratrix. A motion for restitution filed by an interested party would suffice as long as basic requirements of notice and hearing were satisfied. *Id.* at 740. It should be emphasized that the court in *Currie* did not *sup sponte* impose individual liability.

Another court, citing *Currie,* held that a probate court has jurisdiction to enter, *on its own motion,* an order requiring the guardian of an estate to restore money "improperly diverted" from that estate. *Kaphan v. Fidelity and Deposit Company of Maryland,* 564 S.W.2d 459, 461–462 (Tex. Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.). The judgment in *Kaphan* was against the former guardian personally and in favor of the successor guardian in the amount "unaccounted for." *Id.* at 461. In this case by the notation on the docket sheet under the entry of the contested judgment, it appears that the probate court relied on *Kaphan* as justification for its action against Appellant. If that be true, such reliance was misplaced. Although in *Kaphan* the court on its own motion held the guardian personally liable for improper expenditure of estate funds, at least the guardian was notified by personal citation of the show cause hearing on his account, and a hearing actually was held.

Furthermore, we challenge the correctness of the statement in *Kaphan* that "(t)he annual accounting . . . together with the show cause order issued by the probate court constituted pleadings sufficient to invoke the jurisdiction of the court upon the subject matter determined by the judgment." *Id.* at 462.

In *Tharp v. Blackwell,* 570 S.W.2d 154 (Tex.Civ.App.—Texarkana 1978, no writ), the probate court had entered a judgment against a guardian after restating the account for final settlement of the estate under Tex.Prob.Code Ann. § 408 (Vernon 1980). The appellate court reversed the judgment, stating:

> "(n)o money judgment was sought against appellant. The trial court thus erred in rendering a personal judgment against appellant when the proceeding was only one to determine the correctness of the annual account and the account for final settlement. . . . It is well settled that the court may not grant relief not supported by pleadings or prayer."

*Id.* at 158 (citation omitted).

By no stretch of the imagination could a resigning personal representative's final account and show cause order be construed as pleadings under Tex.R.Civ.P. 45 et seq. Not only does the account fail to state a

cause of action in plain and concise language, but there is no opponent to whom fair notice must be given. As the majority correctly points out, Parkdale Bank is not a party to this action. There were no plaintiffs and defendants in this case. Furthermore, no plaintiff in his right mind would ask a court to render judgment against himself, and not against the defendant.

However, more basic than either of those criticisms of *Kaphan* is our belief that the court in that case similarly had no jurisdiction under the Probate Code to take the action it did. A court's powers and duties with respect to resigning or removed guardians under § 399 et seq., applicable in *Kaphan,* do not include the ability to enter personal judgments on its own motion. Although § 414 does provide that the court may enter an order against a negligent guardian and sets out a scheme of statutory damages for that neglect, some person entitled to a portion of the estate must *first* file a complaint against the guardian. Tex. Prob.Code Ann. § 414 (Vernon 1980). Even *Currie* involved the response of the court to a motion filed by another party. As I have previously discussed, there is no suggestion in either removal provision, § 149C(b) or § 222(c), that the order of removal of a personal representative can impose a personal judgment against him.

Accordingly, I would hold that the summary action taken by the probate court against Appellant exceeded the court's jurisdiction under § 221 of the Probate Code and was improper according to both general principles of fair play and the mandates of other statutes, rules of procedure, and case law.

## REQUIREMENT OF EVIDENTIARY HEARING

The probate court had no jurisdiction to enter personal judgment against Appellant for yet another reason. The court ignored the requirement under § 221(d) of an evidentiary hearing on Appellant's final account. Although, the court did set a hearing date of May 25, 1981 and notice to "interested persons" was properly posted, all in compliance with § 221(c), when the court entered the personal judgment against

Appellant on June 4, 1981, no evidentiary hearing to consider the final account had ever been held.

Section 221(d) provides that at the time set for hearing the court *shall* examine the account, and after hearing all evidence for and against the final account, the court "*shall,* if necessary, restate, and audit and settle the same," and upon acceptance of the account, "shall enter an order of approval." (emphasis added). The language of the statute is mandatory. Although a probate court may fail to discharge a resigning personal representative, nothing in § 221 gives a court power to take any action at all if it does not approve the final account after hearing evidence.

In another context, the filing of an accounting by an administrator at final settlement of an estate under §§ 407 and 408 of the Probate Code, it has been held that the court has no discretion in setting a final account for hearing and issuing notice of that hearing. *Crouch v. Stanley,* 390 S.W.2d 795, 798 (Tex.Civ.App.—Eastland 1965, writ ref'd n.r.e.), *cert. denied,* 383 U.S. 945, 86 S.Ct. 1201, 16 L.Ed.2d 208 (1966). The § 407 provision that a court shall upon proper notice hold a hearing on a personal representative's account is a "ministerial duty required by the Probate Code of Texas." *Id.* at 799.

I would hold that the duty of a probate court to hold an evidentiary hearing is no less a requirement under § 221 of the Code than it is under §§ 407 and 408.

## CONCLUSION

I would hold that if after the hearing on the final account a person interested in the estate wishes to hold a resigning personal representative liable for amounts unaccounted for, that interested person may proceed in a separate action in a court of competent jurisdiction, which could include the probate court, to recover any loss to the estate caused by the representative's mismanagement. *See Tharp v. Blackwell,* 570 S.W.2d at 159. In the absence of pleadings or prayer filed by some interested party seeking a personal judgment against Appellant in a separate action, followed by proper notice and opportunity for hearing, the

court below had no authority to enter the judgment against Appellant. In my opinion, the judgment against appellant is void and I would vacate it.